907 P.2d 119

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Dan D. DANIEL, Defendant–Appellant.**

No. 21565.

Court of Appeals of Idaho.

Dec. 7, 1995.

Richard L. Harris, Caldwell, for appellant.

Alan G. Lance, Attorney General; Catherine O. Derden, Deputy Attorney General, Boise, for respondent. Catherine O. Derden argued.

PERRY, Judge.

Dan D. Daniel pled guilty to voluntary manslaughter. I.C. § 18–4006(1). Daniel was sentenced to a unified term of ten years, with a minimum period of incarceration of three and one-half years. Daniel claims on appeal that the district court erred in finding he was competent to understand the nature of the proceedings against him and to assist in his own defense. Daniel further asserts that his sentence constitutes cruel and unusual punishment. We affirm.

## I.

### FACTS AND PROCEDURE

On December 15, 1993, Timothy Lyle Leary died from a gunshot wound while at the home of his friend, Dan D. Daniel. Leary, Daniel and Daniel's four-year-old son were the only people in the home at the time of the shooting. The police initially believed that the gunshot wound was self-inflicted. However, through the course of their investigation they began to suspect Daniel. After two interviews with the police, Daniel confessed to shooting Leary. Daniel was charged with first degree murder. I.C. §§ 18–4001, –4003.

The district court conducted a hearing, pursuant to Idaho Code Section 18–211, to determine if Daniel was competent to stand trial. Two psychologists, Dr. Ward and Dr. Beaver, testified at the hearing. Each stated that Daniel was mildly retarded and that he functioned, intellectually, in the bottom 1 to 2 percent of society. Dr. Ward indicated that he did not believe that Daniel could assist his counsel in the legal proceedings to follow. Dr. Beaver, however, testified that he thought Daniel could understand the proceedings and assist his counsel if the courtroom process was slowed down sufficiently.

The district court found that Daniel was competent to stand trial, but made special provisions that after each witness, and at any other time Daniel's counsel requested, the district court would call a recess so that Daniel and his attorney could converse. Daniel entered a conditional plea of guilty to a reduced charge of voluntary manslaughter, reserving the right to appeal from the district court's determination of his mental capacity. Daniel received a unified sentence of ten years, with a minimum term of three and one-half years.

On appeal, Daniel argues that his mental condition bans criminal prosecution against him. Daniel further argues that in light of his mental condition, the sentence constitutes cruel and unusual punishment.

## II.

### ANALYSIS

#### A. Capacity to Stand Trial

Daniel claims that he lacked the capacity to stand trial. When a defendant's

fitness to proceed is in question, the issue shall be determined by the trial court. I.C. § 18–212. The question on appeal is whether there was sufficient, competent, although conflicting, evidence for the district court to find that Daniel had the capacity to stand trial. *State v. Potter*, 109 Idaho 967, 970, 712 P.2d 668, 671 (Ct.App.1985). The trial court's finding must be clearly erroneous to justify reversal.

■ The test for determining capacity to stand trial, as enunciated by the United States Supreme Court, is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). That test is equivalent to the standard set forth in Idaho Code Section 18–210 which provides:

No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted, sentenced or punished for the commission of an offense so long as such incapacity endures.

Thus, to determine whether Daniel was competent to stand trial, the trial court must inquire whether he had the capacity to understand the proceedings against him and assist in his defense. *State v. Powers*, 96 Idaho 833, 842, 537 P.2d 1369, 1378 (1975).

Daniel refers at length to psychological evaluations performed in 1989 and those performed by Dr. Ward after the shooting. These evaluations indicate that Daniel is mildly retarded, with an IQ of 63–64, and functions in the bottom 1 to 2 percent of those in his age bracket. During the competency hearing, Dr. Ward expressed concern about the second prong of the competency test—Daniel's ability to assist in his defense. Dr. Ward testified:

My opinion is that he can understand the nature of the charges against him. That's a fairly concrete thing that he can understand and with repetition. I'm not sure if he can understand the wide range of the implications of those charges. But primarily, my opinion is that he will have tremendous difficulty assisting in his defense.

The state's psychologist, Dr. Beaver, agreed with Dr. Ward's evaluation that Daniel was mildly mentally retarded. Dr. Beaver reported that Daniel could understand the legal proceedings against him. Specifically Dr. Beaver determined that Daniel could clearly articulate the charges, the possible consequences of a conviction, and the roles of the key players in the legal process. Dr. Beaver testified that Daniel was able to learn new information and skills. Dr. Beaver's evaluation was completed after Dr. Ward's and indicated that Daniel had a greater understanding of the legal process at that time than he did during the interview with Dr. Ward.

In regard to Daniel's ability to assist counsel, Dr. Beaver noted:

I do believe he is able to communicate with his attorney.

Also, given his basic understanding of the situation, his prior limited legal exposure, and with his limited communication skills, I do believe that he can assist, to some extent, with his defense.

However, I do believe there are significant limitations also particularly in this latter point. Specifically, during court proceedings, if information is presented too quickly or too abstractly, he will have difficulty understanding and grasping the material. Similarly, if the proceedings move too quickly, he may have difficulty communicating points to his attorney.

According to Dr. Beaver, Daniel had certain skills which would assist his attorney. For instance, Daniel was able to recall and relate facts pertaining to his actions and whereabouts on the evening of the shooting. Daniel was also able to follow the conversation with Dr. Beaver and to communicate his ideas. Daniel followed simple instructions and satisfactorily completed simple problem-solving questions in the interview. Dr. Beaver suggested that slowing the pace of the legal process and providing time for Daniel to assimilate the information and communicate with his attorney would create an envi-

ronment in which Daniel could contribute effectively to his defense.

■ As noted, both Dr. Ward and Dr. Beaver testified at the competency hearing and provided written evaluations of Daniel's competency. In its opinion, the district court found:

The two experts who testified and who filed reports with the court differ on the ultimate conclusion. One of the doctors, Dr. Ward, concluded that he was mildly mental retarded and unable to communicate with his attorney or to under—fully understand the proceedings against him. The other, Dr. Beaver, virtually on the same conclusions as far as the defendant's capacities is concerned concluded that he was.

The district court was able to evaluate the testimony of each psychologist and determine the weight each opinion merited. On appeal, we will not substitute our view for that of the finder of fact as to the credibility of the witnesses, the weight to be given to the testimony and the reasonable inferences to be drawn from the evidence. *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991). Sufficient, competent, although contradicted, evidence existed to support the district court's finding that Daniel was competent to stand trial. The district court did not err in following the recommendation of Dr. Beaver. Accordingly, the district court's finding in this regard is affirmed.

## B. Daniel's Sentence Does Not Constitute Cruel and Unusual Punishment

■ Daniel argues that, in light of his mental retardation, commitment to the Idaho Department of Corrections constitutes cruel and unusual punishment.

■ The first step in a cruel and unusual punishment review is that the court must make a threshold comparison of the crime committed and sentence imposed to determine whether the sentence leads to an inference of gross disproportionality. *State v. Matteson*, 123 Idaho 622, 626, 851 P.2d 336, 340 (1993). If the initial comparison of the crime and the sentence indicates that the sentence is grossly disproportionate, then further proportionality review is appropriate.

The court will, then, examine sentences in this and other jurisdictions to determine if, in comparison, the term of confinement imposed is disproportionate and therefore a violation of the Eighth Amendment rights of the criminal defendant. *Matteson*, 123 Idaho at 626, 851 P.2d at 340, *citing Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S.Ct. 2680, 2707, 115 L.Ed.2d 836 (1991). It is the fixed portion of the sentence that is treated as the term of confinement for purposes of this analysis. *Matteson*, 123 Idaho at 626, 851 P.2d at 340. The burden of demonstrating that a sentence is cruel and unusual is on the person asserting the constitutional violation. *State v. Clay*, 124 Idaho 329, 332, 859 P.2d 365, 368 (Ct.App.1993).

On appeal, we must first make a threshold comparison of the crime committed by Daniel and sentence imposed to determine whether the sentence leads to an inference of gross disproportionality. On December 15, 1993, emergency vehicles were summoned by a 911 call to Daniel's home. When they arrived Daniel informed them that Leary had committed suicide. Daniel later confessed that he had, in fact, fired the shot that killed Leary. Counsel read to the district court Daniel's account of the events of that evening:

Tim [Leary] came over after work, complaining that some people did not like him and they hated him. We walked down to the store to get beer, came back, standing in the living room, watching MTV. The he went home and came back with a gun. Then he said he wanted to be with his dad in prison. But he put the gun up to his head and his neck.

Then he went to the room to listen to a tape. He said my wife was a whore. I said, "Don't call her that. You don't even know her." He said, "Shoot me." He said, "I'd rather have a friend do it than someone I don't know." I said, "Fine. I'll shoot it at the wall." Then I closed my eyes and pulled the trigger. I was in shock. He started to walk to me. Then he bent over and did not look very comfortable. So I tried to put him on the bed and make him comfortable.

Daniel pled guilty to voluntary manslaughter and was sentenced to a minimum term of three and one-half years. Daniel has failed to demonstrate that his sentence is grossly disproportionate to the homicide committed. His sentence is well below the ten-year minimum for first degree murder, with which he was initially charged. Furthermore, Daniel's sentence is well within the fifteen-year maximum sentence for voluntary manslaughter. Daniel has failed to show that the sentence is grossly disproportionate and, therefore, has not met his threshold burden.

To the extent that Daniel asserts that the sentence is cruel and unusual punishment because of his mental condition, we are unpersuaded. Daniel has failed to present any evidence, argument or authority that under the specific circumstances of his incarceration, the minimum period of confinement or conditions of his confinement are cruel and unusual. A unified sentence of ten years, with a minimum period of three and one-half years, has not been shown to constitute cruel and unusual punishment.

## III.

## CONCLUSION

The district court weighed the conflicting evidence presented and found that Daniel was competent to stand trial. Sufficient, competent evidence supports the district court's finding. Daniel has failed to demonstrate that his sentence is grossly disproportionate to the crime committed. Therefore, Daniel's sentence does not constitute cruel and unusual punishment. Accordingly, the judgment of conviction and sentence are affirmed.

WALTERS, C.J., and LANSING, J., concur.