90 P.3d 278

STATE of Idaho, Plaintiff–Respondent,

v.

Faron E. LOVELACE, Defendant–
Appellant.

Faron Earl Lovelace, Petitioner–
Appellant,

v.

State of Idaho, Respondent.

Nos. 24373, 26927.

Supreme Court of Idaho,
Boise, February 2003 Term.

July 23, 2003.

Rehearing Granted Nov. 20, 2003.

Molly J. Huskey, State Appellate Public Defender; Mark James Ackley, Deputy State Appellate Public Defender, Boise, for appellant. Mark James Ackley, argued.

Hon. Lawrence G. Wasden, Attorney General; L. LaMont Anderson, Deputy Attorney General, Boise, for respondent. L. LaMont Anderson argued.

WALTERS, Justice.

This is a consolidated appeal from Lovelace's conviction for first-degree murder and first-degree kidnapping, for which he was given the death penalty, and from the order summarily dismissing his application for post-conviction relief. We remand for resentencing.

### FACTS AND PROCEDURAL BACKGROUND

Faron Lovelace, a convicted felon and federal fugitive, was arrested by the United States Marshal Service in Bonner County in August of 1996 on federal firearms violations. While being held in the Bonner County jail after his arrest, Lovelace disclosed to law enforcement that he had murdered Jeremy Scott approximately a year earlier, after confronting him at gunpoint, holding him at Scott's cabin site in northern Bonner County, then shooting him in the back of the head as part of a preconceived plan. Lovelace agreed to lead police to where he had hidden the body. The disclosure was part of Lovelace's plan to confess to Scott's murder, in exchange for a guarantee from Bonner County detectives that they would guarantee him

the death penalty and not pursue any charges against his common law wife.

Lovelace was charged with first-degree murder, first-degree kidnapping, and aggravated assault, the last of which was subsequently dropped. Counsel was appointed to represent Lovelace, who had indicated to the court at his initial appearance that he wished to receive the death penalty. In light of Lovelace's expressed desire for the death penalty, defense counsel requested that the court order a competency evaluation.

The prosecution moved to have defense counsel, Philip Robinson, disqualified on the basis that he was campaigning for election to the position of Bonner County Prosecutor. The State withdrew its motion, and Lovelace consented to have Robinson continue to represent him, waiving any potential conflict of interest from Robinson's pursuit of the elective position.

Lovelace then filed his first motion to the court to be allowed to proceed *pro se*. Lovelace waived his preliminary hearing, and he was bound over to the district court. Lovelace then filed a motion to dismiss Robinson as counsel due to a possible future conflict of interest; however, the court refused to appoint new counsel at that time. The arraignment was continued, and the district court then entered a not-guilty plea for Lovelace. New counsel was appointed to represent Lovelace, once Robinson was sworn in as Bonner County Prosecutor.

Newly appointed defense counsel asked the court for a second competency evaluation of Lovelace. Dr. Stephen Poffel prepared a second competency evaluation with respect to his April 1997 evaluation of Lovelace, reaffirming his original conclusion that Lovelace was "able to think normally" and was competent to stand trial. Dr. Michael Urban prepared a report dated February 28, 1997, in which he found Lovelace competent to stand trial and to waive his right to counsel.

Lovelace again sought to represent himself. On August 6, 1997, one month before the scheduled trial, the district court issued an order allowing Lovelace to proceed *pro se* and to be assisted, if needed, by attorney Roger Williams. The court's order recited that after a "detailed inquiry of the defendant relating to his understanding of the criminal process, his competency to waive his right to counsel, and his ability to understand the nature of the proceedings ... the court hereby concludes that the defendant knowingly, freely and voluntarily has waived his right to be represented by attorneys at public expense. The court further concludes that the defendant is competent to waive counsel."

Lovelace gave an opening statement at trial, called two witnesses and testified himself. At the conclusion of the trial, the jury found Lovelace guilty of first-degree murder and first-degree kidnapping.

Prior to sentencing, a presentence report was prepared and provided to Lovelace and his attorney assistant. Lovelace represented himself at sentencing. On December 17, 1997, the trial court sentenced Lovelace to death. Lovelace filed a timely notice of appeal.

Lovelace was appointed new counsel for the post-conviction proceedings. He filed a *pro se* application for post-conviction relief in January of 1998. Again, he requested that counsel be dismissed and that he be allowed to proceed *pro se*. The court granted the motion on August 10, 1998, subject to the appointment of the SAPD as standby counsel. The SAPD filed an amended application for relief on March 3, 1999. In September of 1999, Lovelace moved the court to dismiss the SAPD and to allow him to argue his January 28, 1998 application for post-conviction relief *pro se*. Pursuant to an order dated December 29, 1999, Lovelace again was allowed to represent himself, with Tom McCabe appointed as attorney advisor.

On March 23, 2000, Lovelace sent a letter to the court indicating that he was withdrawing his application and waiving any post-conviction relief. The district court gave notice of its intent to dismiss the application. By letter of July 16, 2000, Lovelace challenged some of the language used in the court's notice and referenced exhibits that he had provided to the court, supporting his earlier claims. Concluding that Lovelace had not substantively responded to the notice of intent to dismiss, the court entered an order

summarily dismissing Lovelace's post-conviction relief application. A timely appeal was filed and the State Appellate Public Defender commenced representation of Lovelace.

## ISSUES ON APPEAL

1. Was Lovelace denied the right to effective assistance of counsel because of the lower courts' inadequate inquiries into the nature and extent of a conflict of interest or because of an actual conflict of interest that adversely affected defense counsel's performance?

2. Was Lovelace denied his right to due process by the trial court's failure to suspend the proceedings and conduct an appropriate hearing on the issue of his competence to stand trial? .

3. Did the trial court err in finding Lovelace competent?

4. Did the trial court err in failing to insure that Lovelace's waiver of counsel was knowing, intelligent and voluntary?

5. Was it reversible error for the district court to fail to record all proceedings and to transcribe all recorded proceedings despite defendant's request in his notice of appeal?

6. Was Lovelace denied his Sixth, Eighth and Fourteenth Amendment rights when the district court denied his request for an investigator to assist him in preparing his defense?

7. Did the district court's "reasonable doubt" instruction depart from the instruction approved in Idaho, thereby lessening the state's burden of proof of the murder charge against Lovelace?

8. Did the district court improperly exclude prospective jurors for cause based on their responses that the death penalty could influence their decision-making ability, contrary to *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)?

9. Because Idaho's death penalty statute has been deemed unconstitutional for dispensing with jury fact-finding of aggravating circumstances under *Ring v. Arizona*, is resentencing barred by the Double Jeopardy Clause or ex post facto considerations?

10. Did the district court err in reviewing the victim impact statements that contained opinions espousing the death penalty for Lovelace?

11. Did the district court err in allowing Lovelace to represent himself during post-conviction proceedings and did the court err in denying him a continuance to present additional information on the issue of competence to waive post-conviction counsel?

12. Did the district court err in summarily dismissing Lovelace's application for post-conviction relief?

13. Does the accumulation of errors require reversal?

## DISCUSSION

*1. Conflict of interest*

 The right to conflict-free representation derives from the Sixth Amendment as applied to the states by the Due Process Clause of the Fourteenth Amendment. *Powell v. Alabama*, 287 U.S. 45, 68, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932). This right has been accorded "not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 1240, 152 L.Ed.2d. 291, 300 (2002), *citing United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

 Whenever a trial court knows or reasonably should know that a particular conflict may exist, the trial court has a duty of inquiry. *See Wood v. Georgia*, 450 U.S. 261, 272–73, 101 S.Ct. 1097, 1104, 67 L.Ed.2d 220, 230–31 (1981); *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346 (1980). The scope and nature of the affirmative duty of the trial judge to assure that criminal defendants are not deprived of the effective assistance of counsel by joint representation of conflicting interests is second only to the concern as to how strong a showing of conflict must be

made before a court will conclude that the defendants have been deprived of their right to effective assistance. *See Holloway v. Arkansas,* 435 U.S. 475, 483, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426, 434 (1978). "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346–47. However, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 347.

Lovelace asserts that he was denied the right to the effective assistance of counsel because of a conflict of interest that the lower courts were aware of, but into which they failed to make adequate inquiry to protect Lovelace's due process rights. The alleged conflict stemmed from appointed counsel's campaign for election to the position of Bonner County Prosecutor in a contested race.

The prosecution in Lovelace's case filed a motion to disqualify defense counsel, Robinson, who had made a successful bid for Bonner County Prosecutor in early November 1996 and was set to take office in January of 1997. At a hearing on November 12, 1996, the magistrate accepted Lovelace's waiver of preliminary hearing and bound Lovelace over to the district court. The magistrate took no action on the motion to disqualify defense counsel, reserving the matter for the district court. The minutes of the arraignment indicate that the district court stated that it would not take up withdrawal of defense counsel at that time. Lovelace requested additional time, recognizing that there might be a future conflict with Robinson as his counsel. On the newly set arraignment date, the district court informed Lovelace that Robinson could not represent him after January 16, and over Lovelace's objections, the district court entered a not-guilty plea on Lovelace's behalf and appointed him new counsel. By order dated January 16, 1997, the district court accepted Robinson's withdrawal as defense counsel "based upon the appearance of conflict that would exist after January 13, 1997" and named Roger Williams as substitute counsel.

Lovelace relies mistakenly on *Holloway, supra,* to secure automatic reversal of his conviction because of the court's failure to make the requisite inquiry. *Holloway* is limited to cases where a trial court improperly requires joint representation over timely objection. *See id.* Furthermore, *Holloway* has been overruled as to a *per se* reversal in favor of requiring a showing as in *Cuyler* that the potential conflict of interest adversely affected counsel's performance. *Mickens v. Taylor, supra.*

The record here does not show that an actual conflict existed in defense counsel's future employment as county prosecutor. *See Garcia v. Bunnell,* 33 F.3d 1193, 1199 (9th Cir.1994), *cert. denied* 514 U.S. 1024, 115 S.Ct. 1374, 131 L.Ed.2d 229 (1995) (The mere fact of defense counsel's future employment with the district attorney's office did not create an actual conflict.). Robinson informed the court that no conflict existed because of Lovelace's expressed desire to plead guilty and to receive a death sentence, which steps might well be completed before Robinson was to take office in January of 1997.

In support of his conflict-based ineffective assistance claim, which was raised to the district court in the post-conviction proceedings, Lovelace provided no facts to suggest that counsel allowed anything adversely to affect his representation, which the district court terminated as of January 16, 1997. Lovelace's argument that counsel should and would have advocated for a plea bargain but for his campaign challenge to the sitting prosecutor whom he claimed was "soft on crime" is speculative and nothing more than a conclusion. We do not give evidentiary value to mere conclusory allegations that are unsupported by admissible evidence. *Paradis v. State,* 110 Idaho 534, 536, 716 P.2d 1306, 1308 (1986). When a post-conviction applicant's evidence has raised no genuine issue of material fact, which if resolved in the applicant's favor, would entitle the applicant to the requested relief, summary dis-

missal is permissible. *Gonzales v. State,* 120 Idaho 759, 763, 819 P.2d 1159, 1163 (Ct.App. 1991); *Hoover v. State,* 114 Idaho 145, 146, 754 P.2d 458, 459 (Ct.App.1988); *Ramirez v. State,* 113 Idaho 87, 89, 741 P.2d 374, 376 (Ct.App.1987). The district court's denial of relief on the conflict of interest claim was proper.

Article I, section 13 of the Idaho Constitution also provides a defendant with a right to effective assistance of counsel. Lovelace cites *State v. Trefren,* 112 Idaho 812, 736 P.2d 864 (Ct.App.1987), in which defense counsel on Trefren's grand theft charge also served as the city prosecutor in misdemeanor cases, urging the Court to interpret the Idaho Constitution to provide more expansive rights than the Sixth Amendment to the federal Constitution. The Court in *Trefren,* however, was not presented with an argument based on the Idaho Constitution and, in keeping with the standard upheld in *Cuyler,* concluded that Trefren had not established any manner in which his lawyer's performance was adversely affected. Lovelace is thus not entitled to relief for the alleged conflict under the Idaho Constitution, and the district court did not err in denying such relief.

### 2. *Suspension of further proceedings pending competency evaluation*

 The failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). In *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the Supreme Court held that a state's statutory procedure for determining an accused's mental capacity to stand trial is constitutionally adequate to protect a defendant's due process right not to be tried while legally incompetent.

Idaho Code § 18–211 requires that when there is reason to doubt the defendant's fitness to proceed as set forth in section 18–210, Idaho Code, the court shall appoint at least one qualified psychiatrist or licensed psychologist, who upon completion of an ex-amination of the defendant shall submit a report to the court. The report should include an opinion as to the defendant's capacity to understand the proceedings against him and to assist in his own defense. I.C. § 18–210(5)(c). The issue of a defendant's fitness to proceed is determined by the trial court:

> When the defendant's fitness to proceed is drawn in question, the issue shall be determined by the trial court. If neither the prosecuting attorney nor counsel for the defendant contests the finding of the report filed pursuant to section 18–211, Idaho Code, the court may make a determination on the basis of such report. If the finding is contested, the court shall hold a hearing on the issue.

I.C. § 18–212(1).

 The test for determining capacity to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The *Dusky* test has been restated in I.C. § 18–210:

> No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted, sentenced or punished for the commission of an offense so long as such incapacity endures.

Therefore, to determine whether Lovelace was competent to stand trial, the trial court must inquire whether he had the capacity to understand the proceedings against him and assist in his defense. *State v. Powers,* 96 Idaho 833, 842, 537 P.2d 1369, 1378 (1975), *cert. denied,* 423 U.S. 1089, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); I.C. § 18–210.

 Lovelace argues for the first time on appeal that he was denied his due process right to a fair trial because of the magistrate's failure to suspend the proceedings once she found cause to conduct a competency inquiry. The longstanding rule of this Court is that we will not consider issues that are presented for the first time on appeal.

State v. Robbins, 123 Idaho 527, 529, 850 P.2d 176, 178 (1993). Fundamental error will nevertheless be reviewed on appeal even if no adequate objection is interposed at trial. State v. White, 97 Idaho 708, 551 P.2d 1344 (1976). Accordingly, we limit our review to whether the trial court committed fundamental error. See State v. Wells, 103 Idaho 137, 645 P.2d 371 (Ct.App.1982). Fundamental error is "[a]n error that goes to the foundation or basis of a defendant's rights." State v. Robbins, supra.

Soon after appointed counsel had the opportunity to meet with the defendant, he learned that Lovelace planned to plead guilty to the murder of Jeremy Scott and was looking to obtain the death penalty. Counsel moved the court to have Lovelace examined to determine whether he was competent to stand trial. The magistrate granted the motion, and the examination took place on October 28, 1996. Dr. Stephen Poffel's report, which found Lovelace competent to stand trial, was submitted to the court on October 31, 1996; although no mention of the report and no comment regarding Lovelace's competency was made by the magistrate at the preliminary hearing on November 12, 1996. Because the finding of competence was not contested, the court was not required to hold a hearing on the issue. See I.C. § 18–212(1). Neither was it required that the proceedings against Lovelace be suspended, except if the court had determined that he lacked fitness to proceed. See I.C. § 18–212(2).

A second evaluation was conducted pursuant to an order signed by the district court, upon the request of newly appointed counsel. Dr. Michael Urban's conclusion that Lovelace was competent to stand trial was submitted to the court on February 28, 1997. In addition, prior to the scheduled summer trial date, Dr. Poffel again examined Lovelace. In his report, Dr. Poffel reaffirmed his original determination that Lovelace was competent but added that Lovelace now appeared to be more open to imprisonment over death. These facts lead but to the conclusion that the magistrate and the district court properly acted to protect the defendant's right to a fair trial.

### 3. Challenge to the court's finding of competency

■ Lovelace contends that the concern with his competency is not that he lacks a factual understanding of the judicial process, but rather that he lacks the "rational understanding" required by Dusky v. United States, supra. The question raised by Lovelace is whether there was sufficient, competent, although conflicting evidence for the district court to find that Lovelace had the capacity to stand trial. State v. Daniel, 127 Idaho 801, 803, 907 P.2d 119, 121 (Ct.App. 1995), citing State v. Potter, 109 Idaho 967, 970, 712 P.2d 668, 671 (Ct.App.1985).

At the time of Lovelace's trial, there was no disputed evidence as to Lovelace's competency. Dr. Poffel articulated after two separate evaluations that Lovelace was competent to stand trial and to assist in his own defense. In his deposition taken on April 28, 1997, Dr. Poffel explained that "the findings were about the same as on the previous examination, and that I didn't have to worry about suicidal thinking or depression anymore than I did the previous time. These are relatively normal scores." Dr. Poffel also explained, "And my finding was that the defendant was not pathologically seeking punishment and not deliberately failing to avail himself of appropriate legal protections." Dr. Urban also found Lovelace competent to stand trial. Other than Lovelace's request to be executed, there is no evidence in the pretrial proceedings or from the trial that raises questions about Lovelace's competency. See Autry v. McKaskle, 727 F.2d 358, 362 (5th Cir.1984), cert. denied, 465 U.S. 1085, 104 S.Ct. 1458, 79 L.Ed.2d 906 (1984)(held counsel not ineffective in not seeking a competency hearing before complying with defendant's decision that he preferred death, rather than life imprisonment, absent a more substantial reason to suspect incompetence than counsel's view that decision was injurious to defendant's case). Even if we assume that this issue was preserved for appeal, the district court's finding that Lovelace was competent is clearly supported by the substantial, competent evidence provided by the psychologists.

*4. Waiver of counsel*

 The Sixth Amendment, which confers on a defendant the right to counsel, also "grants to the accused personally the right to make his defense." *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562, 572 (1975); *State v. McCabe,* 101 Idaho 727, 620 P.2d 300 (1980) (Just as an indigent criminal defendant has a right to appointed counsel, he has a right to reject such representation and conduct his own defense.). "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forego those relinquished benefits (Citations omitted.)." *Faretta, supra* at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581.

 Linking the validity of the waiver of counsel to the competency issue, Lovelace argues that the district court's inquiries were only superficial and the court should have given more weight to counsel's objections to Lovelace representing himself. We examine the totality of the circumstances in determining whether Lovelace's waiver is valid. *See State v. King,* 131 Idaho 374, 376, 957 P.2d 352, 354 (Ct.App.1998), *citing State v. Mitchell,* 104 Idaho 493, 498, 660 P.2d 1336, 1342 (1983), *cert. denied,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983). We reject the State's argument that we should decline to review the issue raised for the first time on appeal because the claimed error concerning the voluntariness of the waiver of Lovelace's right to counsel qualifies as fundamental error. *See State v. Hunnel,* 125 Idaho 623, 625, 873 P.2d 877, 879 (1994).

 To be valid, a waiver of the right to counsel must have been effected knowingly, voluntarily, and intelligently. *State v. Ruth,* 102 Idaho 638, 641, 637 P.2d 415, 418 (1981); *State v. King,* supra. In *State v. Lankford,* 116 Idaho 860, 865, 781 P.2d 197, 202 (1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990), the Court cited to *United States v. Harris,* 683 F.2d 322, 324–25 (9th Cir.1982):

[T]he *Harris* Court found that the defendant must be aware of the nature of the charges filed against him and the possible penalties flowing from those charges, as well as the dangers and disadvantages of self-representation. The *Harris* Court also held that the trial court must discuss with the defendant, in open court, whether the defendant's waiver was knowingly and intelligently made, with an understanding of the charges, and possible penalties and dangers of self-representation.

*See also State v. Langley,* 110 Idaho 895, 719 P.2d 1155 (1986), *citing Faretta v. California, supra.*

At a July 28, 1997 hearing, which was noticed for a change of plea, Lovelace informed the district court that he did not want an attorney but wanted to represent himself in the upcoming trial. As the transcript of that hearing was not specifically requested in addition to the standard transcript described in I.A.R. 28, we look to the minutes of the hearing, which show the following: Lovelace had thirteen years of education; he had been involved in several court proceedings; and he had been in a contested hearing before. The district court informed Lovelace of the hazards of self-representation and advised Lovelace not to give up appointed counsel; however, Lovelace insisted that he did not want to be represented by a lawyer and that he was not comfortable with lawyers. The order of the district court, dated August 8, 1997, further recites that "[t]he Court has conducted a detailed inquiry of the defendant relating to his understanding of the criminal process, his competency to waive his right to counsel, and his ability to understand the nature of the proceedings which have been filed against him by the State of Idaho." From these findings, we can conclude that the district court did not err in concluding that Lovelace knowingly, freely and voluntarily waived his right to counsel.

 Finally, Lovelace argues that the district court should have revisited the waiver of counsel at sentencing, particularly in this, a capital case. There is, however, authority to the contrary:

A competent election by the defendant to represent himself and to decline the assis-

tance of counsel once made before the court carries forward through all further proceedings in that case unless appointment of counsel for subsequent proceedings is expressly requested by the defendant or there are circumstances which suggest that the waiver was limited to a particular stage of the proceedings.

*United States v. Springer,* 51 F.3d 861 (9th Cir.1995), *quoting Arnold v. United States,* 414 F.2d 1056, 1059 (9th Cir.1969), *cert. denied,* 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970). *See also White v. United States,* 354 F.2d 22 (9th Cir.1965) (defendant who represented himself, pled guilty and was sentenced, upon sentence modification and resentencing pursuant to a writ of habeas corpus was not requestioned about his waiver of counsel at resentencing). The Court cannot say that the district court had any duty to conduct additional inquiries into Lovelace's waiver of counsel.

5. *Failure to record "all oral proceedings"*

■ Lovelace claims that the district court committed reversible error in failing to record all oral proceedings such that they could be transcribed for purposes of appeal. Lovelace cites to the record, identifying proceedings that were not recorded, that he claims more than likely involved matters that directly affected his due process rights, and which are now unavailable for transcripts to support his claims of error on appeal. He also asserts that he had a right to be present at said conferences.

■ I.C. § 1–1103 provides that the reporter "shall correctly report all oral proceedings had in said court...." Any failure to record the telephone conferences and pretrial conferences between counsel and the court, as reflected on billing statements and cited by Lovelace, do not constitute noncompliance with the statute. It is basic to appellate practice that error will not be presumed, but must be affirmatively shown by an appellant. *State v. Langley,* 110 Idaho 895, 897, 719 P.2d 1155, 1157 (1986). Furthermore, error in the abstract does not necessarily rise to the level of constitutional dimension unless and until a defendant prop-

erly presents a specific prejudice from such error. *State v. Stoddard,* 105 Idaho 169, 667 P.2d 272 (Ct.App.1983). Lovelace's contentions that the unrecorded proceedings *probably* dealt with appealable issues and required his presence are nothing more than speculation. We find here no error.

6. *Denial of Lovelace's request for an investigator*

■ The constitution does not require a state to provide expert or investigative assistance merely because a defendant requests it. *State v. Olin,* 103 Idaho 391, 648 P.2d 203 (1982), *citing United States ex rel. Smith v. Baldi,* 344 U.S. 561, 568, 73 S.Ct. 391, 395, 97 L.Ed. 549, 556 (1953). A defendant's request for expert or investigative services should be reviewed in light of all circumstances and be measured against the standard of "fundamental fairness" embodied in the due process clause. *Id., citing Watson v. Patterson,* 358 F.2d 297, 298 (10th Cir. 1966). Before authorizing the expenditure of public funds for a particular purpose in an indigent's defense, the trial court must determine whether the funds are necessary in the interest of justice. *State v. Powers,* 96 Idaho 833, 838, 537 P.2d 1369, 1374 (1975), *cert. denied,* 423 U.S. 1089, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976). Such a review necessarily involves the exercise of the sound discretion of the trial court, and a denial of a request for investigative assistance will not be disturbed absent a showing that the trial court abused its discretion by rendering a decision which is clearly erroneous and unsupported by the circumstances of the case. *State v. Olin, supra.*

It appears that Lovelace requested the services of an investigator at the July 28, 1997, hearing in connection with his request to represent himself. There is, as noted previously, no transcript of that hearing. The district court's order granted Lovelace's request to proceed to trial *pro se,* with attorney advisors, Roger Williams and Daniel Featherston, to assist Lovelace in the preparation of subpoenas to secure the attendance of witnesses, whom Lovelace feared might be difficult to locate. Under the circumstances, where the district court made advisory coun-

sel available to conduct the investigative services Lovelace asserted he needed for his defense, there was no abuse of the district court's discretion. We find here no reversible error.

### 7. *Reasonable doubt instruction*

 The question of whether a jury has been properly instructed is a question of law mandating free review. *State v. Merwin*, 131 Idaho 642, 647, 962 P.2d 1026, 1031 (1998). Failure to object to an instruction in a criminal case does not constitute a waiver of any objection. *State v. Smith*, 117 Idaho 225, 229, 786 P.2d 1127, 1131 (1990). The test on review of an instruction is "whether the instruction that was given to the jury misstated the law or was so confusing and argumentative as to mislead the jury." *Merwin, supra.*

Lovelace argues that the reasonable doubt instruction given to the jury departed from the Idaho-approved instruction taken from *State v. Cotton*, 100 Idaho 573, 602 P.2d 71 (1979). Specifically, Lovelace challenges the language requiring that the jury be "firmly convinced" of defendant's guilt and requiring a "real possibility" that defendant was not guilty before acquitting him, asserting that the state's burden was thus reduced in violation of *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).

Instruction No. 5 that was given in Lovelace's case defined reasonable doubt as:

> proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases, the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged; you must find the defendant guilty. If on the other hand, you think there is a real possibility that he or she is not guilty, you must give the defendant the benefit of the doubt and find the defendant not guilty.

This instruction, based on the Federal Judicial Center, Pattern Criminal Jury Instruction 21, has been held not to misstate the law or mislead the jury. *Merwin, supra.* Thus,

the district court's use of the instruction was not reversible error.

### 8. *Exclusion of potential jurors*

 Lovelace next argues that the district judge conducted inadequate voir dire prior to excusing six potential jurors for their views on the death penalty. He argues that under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the remedy should be reversal of the conviction. We disagree.

In *Witherspoon*, only the jury-imposed death sentence was vacated. The Court refused to reverse the conviction, stating:

> We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction.

Because we remand this case to the district court for resentencing but do not set aside Lovelace's conviction, any error under *Witherspoon* was harmless.

### 9. *Sentence of death*

In *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the United States Supreme Court held that "[c]apital defendants, no less than non-capital defendants, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 589, 122 S.Ct. at 2432, 153 L.Ed.2d at 564. The effect of *Ring* was to convert statutory aggravating circumstances relevant to sentencing into "the functional equivalent of an element of a greater offense," *id.* at 609, 122 S.Ct. at 2443, 153 L.Ed.2d at 577, which was to be proved to a jury beyond a reasonable doubt. *Id.* at 606–09, 122 S.Ct. at 2442–43, 153 L.Ed.2d at 575–77; *Apprendi v. New Jersey*, 530 U.S. 466, 482–84, 120 S.Ct. 2348, 2359–60, 147 L.Ed.2d 435, 450–51 (2000). Thus, *Ring* rendered unconstitutional the sentencing scheme of I.C. § 19–2515 that required the trial judge to make the factual findings regarding the existence of aggravating circumstances, and invalidated the death sentence in Lovelace's case. *See*

*State v. Fetterly*, 137 Idaho 729, 52 P.3d 874 (2002) (requiring vacation of the death sentence and remand for resentencing pursuant to *Ring* ).

Following oral argument, this Court requested additional briefing from the parties on the questions raised by the invalidation of the death sentence, *i.e.*, whether double jeopardy is a bar to resentencing Lovelace to death and whether resentencing Lovelace under the newly enacted death penalty statute violates the Ex Post Facto Clause of the federal Constitution. We address in turn these issues and related issues raised by the parties.

### A. Double Jeopardy

■ Lovelace argues that resentencing him to death in light of *Ring* will violate the Double Jeopardy Clause. He reasons that the State should not be able to seek the death penalty in a subsequent sentencing proceeding because he has previously been convicted of the lesser-included offense of first-degree murder, which did not include the elements of the greater offense of murder plus aggravating circumstances. Double jeopardy, he asserts, bars any attempt by the State to convict Lovelace of the greater offense through the penalty phase.

■ The Double Jeopardy Clause consists of several protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969). These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense. *United States v. Wilson*, 420 U.S. 332, 339, 95 S.Ct. 1013, 1020, 43 L.Ed.2d 232, 239 (1975).

■ "Historically, we have found double jeopardy protections inapplicable to sentencing proceedings, *see Bullington [v. Missouri]* 451 U.S. [430] at 438, 101 S.Ct. [1852] at 1857–1858 [68 L.Ed.2d 270, 278–79] [ (1981) ], because the determinations at issue do not place a defendant in jeopardy for an 'offense.'" *Monge v. California*, 524 U.S. 721, 728, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615, 623 (1998). The premise of the *Bullington* prohibition against a second capital sentencing proceeding lies in Missouri's unique capital sentencing scheme, which "was itself a trial on the issue of punishment." *Bullington*, 451 U.S. at 438, 101 S.Ct. at 1858, 68 L.Ed.2d at 279. There, the Court held that requiring a defendant to submit to a second, identical proceeding was tantamount to permitting a second prosecution of an acquitted defendant. *Id.* at 446, 101 S.Ct. at 1862, 68 L.Ed.2d at 283–84. "The protection afforded by the Double Jeopardy Clause to one acquitted by jury also is available to him, with respect to the death penalty, at his retrial." *Id.* Unlike Lovelace, however, Bullington had been sentenced to life imprisonment by the original sentencing jury, and could not, on retrial be given the death penalty, because the first jury's deliberations bore the "hallmarks of the trial on guilt or innocence." *Id.* An "acquittal" at a trial-like sentencing phase is required to give rise to double jeopardy protections. *Id.* at 439, 101 S.Ct. at 1858, 68 L.Ed.2d at 279.

Following the decision in *Ring*, the Supreme Court explained:

> [T]he Double Jeopardy Clause can, and must, apply to some capital sentencing proceedings consistent with the text of the Fifth Amendment. If a jury unanimously concludes that a State has failed to meet its burden of proving the existence of one or more aggravating circumstances, double-jeopardy protections attach to that "acquittal" on the offense of "murder plus aggravating circumstance(s)."

*Sattazahn v. Pennsylvania*, 537 U.S. 101, 113, 123 S.Ct. 732, 740, 154 L.Ed.2d 588 (2003). This reasoning evolved from *Arizona v. Rumsey*, 467 U.S. 203, 211, 104 S.Ct. 2305, 2310, 81 L.Ed.2d 164, 171–72 (1984), where the Court held that "a capital defendant cannot receive the death penalty on resentencing if he originally had been sentenced to life in prison," and *Poland v. Arizona*, 476 U.S. 147, 157, 106 S.Ct. 1749, 1756, 90 L.Ed.2d 123, 133 (1986), where the defendants, could receive the death penalty on resentencing because

**68**

they did not face sentencing on a charge of which they had been previously acquitted for double jeopardy purposes. As stated by the Arizona Supreme Court in resentencing Timothy Ring, "a defendant cannot be sentenced to death at a subsequent sentencing proceeding if 'the sentencer or reviewing court has decided that the prosecution has not proved its case that the death penalty is appropriate.'" *State v. Ring*, 204 Ariz. 534, 549, 65 P.3d 915, 930 (2003), *citing Poland v. Arizona*, 476 U.S. 147, 155, 106 S.Ct. 1749, 1755, 90 L.Ed.2d 123, 132 (1986).

Relying primarily on *Sattazahn v. Pennsylvania*, 537 U.S. 101, 113, 123 S.Ct. 732, 740, 154 L.Ed.2d 588 (2003), the State maintains that Lovelace was never acquitted of the three statutory aggravating factors found by the district judge in order to sentence Lovelace to death, in addition to the jury's findings necessary for a conviction for first-degree murder. Neither can there be an inference of any implied acquittal of the statutory aggravating factors.

> [N]either judge nor jury acquitted petitioner of the greater offense of "first degree murder plus aggravating circumstance(s)." Thus, when petitioner appealed and succeeded in invalidating his conviction of the lesser offense, there was no double jeopardy bar to Pennsylvania's retrying petitioner on both the lesser and the greater offense; his "jeopardy" never terminated with respect to either.

*Id.* The fact finder in Lovelace's case made those findings necessary to impose a death sentence, which was the sentence he received at his original trial. In no sense has a fact finder concluded that the State failed to prove aggravating circumstances beyond a reasonable doubt. *See State v. Ring*, 204 Ariz. at 550, 65 P.3d at 931. On resentencing, then, Lovelace will not face sentencing on a charge of which he had been previously "acquitted" for double jeopardy purposes. *Id. citing Poland, supra*, 476 U.S. at 157, 106 S.Ct. at 1756, 90 L.Ed.2d at 133. Jeopardy did not attach and double jeopardy did not bar the subsequent death sentence. *See id.*

 Lovelace submits that if the State is allowed to advise a new jury that

Lovelace has been convicted of first-degree murder, collateral estoppel should bar imposition of a second death sentence in Lovelace's case. The Double Jeopardy Clause incorporates the doctrine of collateral estoppel, which the Court defined as providing that "when an issue of ultimate fact has once been determined by a valid judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970). The factual predicate for application of the doctrine is that "an issue of ultimate fact has once been determined" in favor of the party seeking to apply the doctrine. *See Schiro v. Farley*, 510 U.S. 222, 232, 114 S.Ct. 783, 790, 127 L.Ed.2d 47, 58 (1994). The jury found Lovelace guilty of first-degree murder and of first-degree kidnapping; the trial judge then found three aggravating factors. Under no reasonable view of the facts can this Court conclude that an ultimate fact was determined in Lovelace's favor. Moreover, there is but one lawsuit being litigated to final judgment and sentence. Therefore, we find no constitutional infirmity in holding a second sentencing hearing.

Lovelace also argues that double jeopardy bars future proceedings to supplement the findings of Lovelace's original jury, which was discharged after finding Lovelace guilty of first-degree murder. He cites *State v. Crumley*, 128 Ariz. 302, 306, 625 P.2d 891, 895 (1981), where the court considered the propriety of convening a new jury to supplement the original jury's finding to include proof of the allegation of prior conviction. However, the court determined that it did not need to address the double jeopardy argument. *Id.*

"Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717, 727 (1978), *quoting from Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949). According to the Supreme Court in *Wade:*

The double-jeopardy provision of the Fifth Amendment ... does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in most cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event, the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again.

336 U.S. at 688–89, 69 S.Ct. at 837, 93 L.Ed. at 978.

 "The ability to resentence a capital defendant by a different set of jurors is implicit in the double jeopardy cases decided by the Supreme Court in a death penalty context. *See Rumsey,* 467 U.S. at 211, 104 S.Ct. at 2310 [81 L.Ed.2d at 171–72]; *Wade,* 336 U.S. at 688–89, 69 S.Ct. at 837 [93 L.Ed. at 978]." *State v. Ring,* 204 Ariz. at 551, 65 P.3d at 932. A capital defendant whose original sentence is vacated on appeal can be resentenced to death so long as the defendant has not been "acquitted" of the death sentence. *Id.* Resentencing does not supplement the original jury verdict.

### B. Ex Post Facto Clause

 Article I, § 10 of the United States Constitution prohibits a state from passing any "ex post facto law." A critical element of an ex post facto analysis is that the law must be "retrospective, that is, it must apply to events occurring before its enactment." *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). Therefore, application of the death penalty statutes enacted in 2003, after Lovelace's crimes, trial, and sentencing, and the issuance of *Ring,* raises ex post facto constitutional issues.

Lovelace contends that the changes in the death penalty scheme do not simply change from judge to jury sentencing, but they create a new offense of capital murder, for which death is the punishment. The alteration in the treatment of aggravators from sentencing factors to elements of capital murder, he argues, are substantive changes for the purpose of the Ex Post Facto Clause. The State maintains that only the methods by which it is determined whether a defendant will be sentenced to death—that is, the procedures—have been changed by the newly enacted statute, which is thus not violative of the Ex Post Facto Clause.

 The ex post facto doctrine prohibits a state from "retroactively alter[ing] the definitions of crimes or increas[ing] the punishment for criminal acts." *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30, 39 (1990). Ruling that Florida's amended sentencing scheme did not violate the Ex Post Facto Clause, the Court there held that the statutory change between the two sentencing methods was "clearly procedural," and "[t]he new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." *Dobbert v. Florida,* 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344, 356 (1977). A change in law will be deemed to affect matters of substance where it increases the punishment or changes the ingredients of the offense or the ultimate facts necessary to establish guilt. *Hopt v. Utah,* 110 U.S. 574, 580, 4 S.Ct. 202, 205, 28 L.Ed. 262, 265 (1884).

Idaho Code § 18–4004 describes first-degree murder and prescribes a punishment of life imprisonment or death pursuant to the guidelines outlined in I.C. § 19–2515. Clearly, Lovelace had fair warning that death was a possible punishment for first-degree murder, and we cannot conclude that the subsequent statute authorized a more onerous punishment than that authorized by the unconstitutional statute. A new law that did "not alter the definition of the crime ... of which Youngblood was convicted, nor [ ] increase the punishment for which he [was] eligible as a result of that conviction [was] a procedural change." *Collins, supra,* 497 U.S. at 44, 110 S.Ct. at 2720, 111 L.Ed.2d at 40.

The inhibition against the passage of ex post facto laws does not extend to limit the legislative control of remedies and modes of procedure, which do not affect matters of substance. *See State v. Ring*, 204 Ariz. at 547, 65 P.3d at 928, *quoting Beazell v. Ohio*, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216, 218 (1925). Under the new sentencing statutes, the state must prove the same aggravating circumstances required by the former statute and must prove them to a jury beyond a reasonable doubt. "The new sentencing statutes do not place the defendant in jeopardy of any greater punishment than that already imposed under the superseded statutes," *id.*, and therefore do not violate the Ex Post Facto Clause.

### C. Due Process concerns

■ Lovelace contends that to allow Lovelace to be resentenced under the new death penalty scheme would violate his due process rights in that he will be subjected to new procedures not in effect when he committed his offense, was tried and was first sentenced to death. He argues that Lovelace had no notice of the life and death consequences of his actions in defending himself against the State's prosecution before and during trial, no notice of the aggravators to be relied upon in a subsequent sentencing, and no notice that a subsequent jury could utilize the evidence from his initial trial in sentencing. These are the same arguments that were advanced in *Coleman v. McCormick*, 874 F.2d 1280 (9th Cir.1989), where the court determined that the newly enacted Montana death penalty statute adding the functional equivalent of a sentencing trial to the sentencing scheme violated Coleman's due process rights. The statute under which Coleman was initially sentenced provided a defendant found guilty of aggravated kidnapping was automatically sentenced to death. The *Coleman* Court decided that it would be mere speculation to conclude that defense counsel might have made the same pretrial and trial decisions regardless of the sentencing scheme; therefore, it vacated the death sentence on due process grounds. *Id.* at 1289.

Undoubtedly, Lovelace had adequate notice that his conduct constituted first-degree murder that carried a potential death sentence. Although the Idaho death penalty scheme was struck down in *Ring*, the process formulated in the new statute changes only the decision maker from judge to jury. The situation is not like that created by the Montana statutes at issue in *Coleman*. Lovelace could only be deprived of adequate notice in that the statutory aggravators that remain unchanged in the new statute would not have been identified by the State in the charging information. The State responding to this claim, however, asserts that neither *Apprendi* nor *Ring* addressed "whether notice of a fact that would be used to support a sentence had to be conveyed to the defendant through an indictment versus some other means." *Terrell v. State*, 276 Ga. 34, 572 S.E.2d 595 (2002). It has not been shown how Lovelace will be denied due process in the resentencing based on the State's failure to allege statutory aggravating factors in the information. Therefore, we do not address the harmless nature of any such alleged error.

Lovelace argues that when Idaho's death penalty scheme was invalidated, the remaining valid portions of the relevant statutes become controlling. He argues that pursuant to the doctrine of severability, Lovelace's sentence was automatically reduced to life imprisonment. This argument, however, ignores that I.C. § 18–4004 at all times material provided that the punishment for first-degree murder was death or life imprisonment. *Ring* did not invalidate any of the aggravating circumstances found in I.C. § 19–2515, only the identity of the fact finder given the task of determining whether aggravating circumstances exist to justify a sentence of death. *People v. Harvey*, 76 Cal. App.3d 441, 142 Cal.Rptr. 887 (1978), involved a judicial determination vacating the death sentence and holding that the only constitutional sentence for the crime Harvey committed was life imprisonment. Idaho's statute is unlike the California statute at issue in *Harvey*. The death penalty continues to be available for Lovelace's crime, provided the aggravating circumstances are found in accordance with the newly enacted statute.

*D. Bill of Attainder*

Lovelace argues that Idaho's new death penalty statutes constitute an unconstitutional bill of attainder, because the legislation targets an easily ascertainable group—those convicted of first-degree murder and subject to a penalty of death.

A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *See United States v. Brown,* 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965); *State v. Gee,* 107 Idaho 991, 993, 695 P.2d 376, 378 (1985). Assuming *arguendo* that the specificity element is satisfied, we agree with the State's argument that the death penalty is not imposed without the benefit of a trial, and thus the Bill of Attainder Clause is not implicated.

**10.** *Victim impact statements*

Contained in at least two of the victim impact statements from Jeremy Scott's family members were opinions advocating that Lovelace be sentenced to death, which Lovelace argues was error for the district court to consider in sentencing. In that the issue relates to Lovelace's sentence of death, which under *Ring v. Arizona, supra,* will be vacated, the issue need not be addressed, except for instructive purposes upon resentencing.

In *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the Court held that the Eighth Amendment erects no *per se* bar prohibiting a capital sentencing jury from considering "victim impact" evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family. The *Payne* Court, however,

> left undisturbed the holding in *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), that the "the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violated the Eighth Amendment [of the United States Constitution]."

*Payne, supra,* 501 U.S. at 830 n. 2, 111 S.Ct. at 2611 n. 2, 115 L.Ed.2d at 739 n. 2. *See Lynn v. Reinstein,* 205 Ariz. 186, 68 P.3d 412 (2003); *Olsen v. State,* 67 P.3d 536, 599 (Wyo. 2003). Although twelve states revised their death penalty statutes after *Payne* to provide for consideration of victim impact evidence during capital sentencing proceedings, *see Olsen v. State,* supra, n. 14, Idaho has not provided by statute or constitution that victim impact evidence is a matter relevant to determination of the sentence in the sentencing phase of a capital case. *See* I.C. § 19–2515. Adhering to *Booth, supra,* therefore, we are compelled to hold that characterizations and opinions about the crime, the defendant, and the appropriate sentence shall not be permitted as a part of victim impact evidence. At the resentencing, the victim impact evidence of the type challenged here shall be inadmissible.

**11.** *Competency of Lovelace's waiver of counsel for post-conviction proceedings*

The right to counsel in post-conviction proceedings is not a constitutional right, but a matter left to the discretion of the trial judge. *Follinus v. State,* 127 Idaho 897, 902, 908 P.2d 590, 595 (Ct.App.1995). However, I.C.R. 44.2 provides for the mandatory appointment of counsel for post-conviction review after the imposition of the death penalty. When waiving the right to counsel, the waiver is tested by examining the totality of the circumstances. *State v. Mitchell,* 104 Idaho 493, 498, 660 P.2d 1336, 1342 (1983), *cert. denied,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983).

In Lovelace's case, the district court duly appointed counsel, whom Lovelace immediately requested be dismissed from the case. At a hearing on August 7, 1998, the district court dismissed counsel, as requested by Lovelace; but named the State Appellate Public Defender (SAPD) as advisor and standby counsel. The district court further found that Lovelace had made a knowing, voluntary, intelligent waiver of his right to counsel and a choice for self-representation.

In September of 1999, Lovelace filed a motion to dismiss the SAPD as defense counsel based upon a conflict and to allow Love-

lace to represent himself. The SAPD objected, contending that Lovelace's request to appear *pro se* was grounded in his mental illness. The district court conducted a hearing and reviewed the affidavit from William S. Logan, M.D., whose assistance was requested by the SAPD "to serve as our consultant, to help us understand Petitioner and, possibly, to serve as an expert witness." Dr. Logan stated in his affidavit:

> It is my opinion that Mr. Lovelace is not competent to proceed due to mental disease (illness). Mr. Lovelace suffers from a severe longstanding personality disorder marked by paranoia, episodes of rage, wide shifts in emotional stability, grandiosity, and self-destructive behavior. He is unable to tolerate the stress of the appellate process. His thinking about his attorneys has become so distorted; he now misunderstands their actions and motivations. His paranoia has reached near psychotic proportions about his counsel. Presently he cannot comprehend or rationally consider his attorney's advice. It is my opinion his mental health prevents him from making an informed voluntary knowing decision about whether to retain counsel.

The court also reviewed the deposition of Stephen Poffel, M.D., and then the court ordered another competency examination to be conducted by Thomas R. Kruzich, M.D. The report from Dr. Kruzich indicated, consistent with prior competency evaluations conducted pre-trial, that Lovelace exhibited "no impairment in this individual's ability to understand the proceedings against him, nor to assist in his defense, or to assist with counsel."

A trial judge is under a continuing duty to observe a defendant's ability to understand the proceedings against him. "Whenever there is reason to doubt the defendant's fitness to proceed as set forth in section 18–210 ... the court shall appoint at least one (1) qualified psychiatrist or licensed psychologist ... to examine and report upon the mental condition of the defendant to assist counsel with defense or understand the proceedings." I.C. § 18–211. The district court considered the evidence on Lovelace's competency and issued an order finding Lovelace competent to waive the assistance of counsel and to proceed *pro se*. The district court's decision finding that Lovelace had the capacity to waive his right to counsel is supported by substantial, competent, although conflicting evidence, and accordingly should not be disturbed. *Accord, State v. Daniel,* 127 Idaho 801, 803, 907 P.2d 119, 121 (Ct.App.1995), *citing State v. Potter,* 109 Idaho 967, 970, 712 P.2d 668, 671 (Ct.App.1985).

Lovelace next argues that the district court erred in denying the SAPD's motion for additional time to supplement Dr. Logan's affidavit, even beyond a thirteen-day extension granted at the hearing. A continuance is a matter within the district court's discretion, *State v. Ransom,* 124 Idaho 703, 864 P.2d 149 (1993), which under the circumstances of this case has been properly exercised. We find here no error.

## 12. *Summary dismissal of post-conviction application*

To withstand summary dismissal, a post-conviction applicant must present evidence establishing a *prima facie* case as to each element of the claims upon which the applicant bears the burden of proof. *Pratt v. State,* 134 Idaho 581, 583, 6 P.3d 831, 833 (2000). Here, the district court ordered Lovelace's application for post-conviction relief dismissed, stating: "Lovelace further responded to the Notice of Intention to Dismiss the Petition for Post-conviction Relief by again stating his desire to withdraw the petition. Lovelace has made no substantive response to the Notice."

Dismissal of the application can be sustained on the ground that Lovelace knowingly, voluntarily and intelligently waived the grounds for which he sought relief. *See Palmer v. Dermitt,* 102 Idaho 591, 593, 635 P.2d 955, 957 (1981).

## 13. *Cumulative error*

The State correctly points out that the doctrine of cumulative error is predicated on the finding of error in the first instance. *State v. Lovelass,* 133 Idaho 160, 171, 983 P.2d 233, 244 (Ct.App.1999).

## CONCLUSION

Lovelace was not denied the right to effective assistance of counsel, and the exercise of his right to waive counsel was found to be competent. The district court did not err in conducting the competency reviews or in concluding that Lovelace had voluntarily, knowingly and intelligently waived his right to counsel. Lovelace has not established reversible error in the conduct of the trial, the selection of the jury, the "reasonable doubt" instruction, or in his contests to the summary dismissal of his post-conviction application. Thus, the conviction is affirmed. However, we vacate the sentence in compliance with the directives of *Ring v. Arizona*, and we direct that Lovelace be resentenced under the newly enacted death penalty statutes, which procedure presents neither a double jeopardy nor an ex post facto problem.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN concur.