## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 33447

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

DAVID ALLEN DALRYMPLE,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2007 Term

2007 Opinion No. 28

Filed: February 21, 2007

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, for the County of Ada. Hon. Michael R. McLaughlin, District Judge.

The judgment of conviction is <u>affirmed.</u>

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Diane M. Walker argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Ralph R. Blount argued.

_____

**JONES, Justice**

David Allen Dalrymple was convicted on felony counts of lewd conduct with a child, sexual abuse of a child, and second-degree kidnapping. The Court of Appeals vacated Dalrymple's conviction, holding that the district court erred in failing to provide *Faretta* warnings contemporaneously to his waiver of the right to counsel. The State petitioned for review. We affirm Dalrymple's conviction.

**I.**

Dalrymple appeals from felony convictions on two counts of lewd conduct with a child under sixteen, I.C. § 18-1508, one count of sexual abuse of a child under sixteen,

1

I.C. § 18-1506, and two counts of second-degree kidnapping, I.C. § 18-4503.[1] On October 5, 2003, Dalrymple got into an argument with his girlfriend, Shelley, at her house where they both lived. The argument soon escalated into an altercation – Dalrymple handcuffed Shelley, pinched her breasts, and drug her into a bathroom in the house. When Shelley's daughter, K.B., tried to escape to get help, Dalrymple put her into a headlock, drug her through the house, and hit her head on the bathroom door. He would not allow either Shelley or K.B. to leave. Later on that evening, he pulled a telephone cord out of the wall after K.B. called 911.

Additional allegations soon arose. K.B. told her mother after the October 5 incident that she was "tired of hiding it." Beginning in the spring of 2000 through October 2003 – while she was between 8 and 11 years old – K.B. alleged that Dalrymple would show her pornographic magazines and videos, would pose her in sexually suggestive positions, and would touch her over her body with his hands, tongue, and penis. At times, Dalrymple would also handcuff and tie up K.B. with rope, all while imploring her not to tell her mother.

In February and March 2004, Dalrymple filed several motions to disqualify his public defender and on April 7, 2004 – approximately six weeks before trial – the district court heard the motions. Dalrymple expressed dissatisfaction with his attorney on a number of grounds, including a belief that his attorney was not looking for exonerating evidence. The district court found that Dalrymple's attorney met professional standards and denied the motions to disqualify. Dalrymple then inquired about representing himself. The district court warned him of both the potential consequences of representing himself and the benefits of retaining counsel. Dalrymple indicated he understood the pitfalls of proceeding pro se, stating that it would be "foolish" to represent himself, and chose to keep his attorney for trial.

After close of the evidentiary phase of the trial, Dalrymple sought the court's permission to present an additional defense that his attorney had not presented. He wished to argue that he used hypnotherapy on K.B. to convince her that he had molested her, when in fact no molestation had occurred. His attorney claimed to lack the proper

---

[1] Dalrymple was also charged with and convicted of one count of domestic battery, one count of injury to a child, one count of intentional destruction of a telecommunication line, and two counts of violating a no-

2

foundation to raise this hypnosis defense, even after an investigation, and that it would be "tantamount to just asking the jury to come back with a guilty verdict." According to his attorney, Dalrymple had no training or education in hypnosis. Moreover, in the course of the investigation, one of Dalrymple's brothers told the defense investigator that he never heard him discuss hypnosis. Another brother was vague, stating that he may have heard about Dalrymple performing hypnosis at a barbecue but provided no further details to substantiate Dalrymple's claim.

The district court allowed Dalrymple two options: either to proceed to closing arguments without presenting his defense or to reopen the case, discharge his attorney, and present his hypnosis defense pro se. At that time, the district court alerted Dalrymple that he would be subject to cross-examination and would make his own closing argument, but offered no other warnings about the risks of representing himself. Dalrymple chose to discharge his attorney, who remained as standby counsel, and the case was reopened. Later, after closing arguments, the district court made findings on the record that Dalrymple had received full warnings about representing himself at the April 7 pretrial hearing.

Dalrymple testified first. When he began to explain hypnosis to the jury, the prosecutor objected, citing a lack of foundation. In sustaining the objection, the district court told him that he would need to establish his qualifications before testifying further on the practice of hypnosis. The district court permitted him to testify about what actions he took to hypnotize K.B. After his testimony, Dalrymple recalled Shelley to testify. He then sought to recall K.B. but the district court refused, stating that she was released from her subpoena and was at school. The district court allowed Dalrymple to make an offer of proof as to how he believed K.B. would testify, namely that he had gone through hypnotherapy with her over the past three years. The jury convicted Dalrymple on all charges. On the felony counts he is appealing, the district court sentenced Dalrymple to two unified terms of twenty years fixed with an indeterminate life sentence for each count of lewd conduct, fifteen years fixed for the count of sexual abuse, and ten years fixed for each count of kidnapping.

contact order that Shelley obtained after October 5. He does not appeal these convictions.

## II.

We address four issues in this opinion: 1) whether Dalrymple knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel; 2) whether the district court abridged Dalrymple's Sixth Amendment right to compulsory process; 3) whether the district court made prejudicial comments; and 4) whether the district court imposed excessive sentences.

### A.

"When considering a case on review from the Court of Appeals, this Court does not merely review the correctness of the decision of the Court of Appeals. This Court acts as though it is hearing the matter on direct appeal from the decision of the trial court. However, this Court does give serious consideration to the decision of the Court of Appeals. When this Court grants a petition to review a Court of Appeals decision, it will ordinarily hear all the issues presented to the Court of Appeals." *State v. Cope*, 142 Idaho 492, 495, 129 P.3d 1241, 1244 (2006) (quoting *Garza v. State*, 139 Idaho 533, 535, 82 P.3d 445, 447 (2003)).

### B.

The Sixth Amendment guarantees a criminal defendant the right "to have the assistance of counsel for his defense." *Accord* Idaho Const. Art. I, § 13. The Sixth Amendment also affords a defendant the right to forego the assistance of counsel and to defend himself. *Faretta v. California*, 422 U.S. 806, 819 (1975); *accord* Idaho Const. Art. I, § 13. "To be valid, a waiver of the right to counsel must have been effected knowingly, voluntarily, and intelligently." *State v. Lovelace*, 140 Idaho 53, 64, 90 P.3d 278, 289 (2003). This Court will "examine the totality of the circumstances in determining whether…[a] waiver is valid." *Id*. The State bears the burden to prove that the defendant voluntarily waived his Sixth Amendment rights. *State v. Hunnel*, 125 Idaho 623, 625, 873 P.2d 877, 879 (1994).

At the outset, Dalrymple argues that the district court impermissibly coerced him to choose between his right to testify on his own behalf and his right to counsel when he asked the district court to reopen the case after the close of the evidentiary phase. The decision to reopen a case lies within the district court's discretion. *State v. Cutler*, 94 Idaho 295, 298, 486 P.2d 1008, 1011 (1971). Under the Sixth Amendment, the right to

4

present evidence is subject to reasonable limitations, "so long as they are not 'arbitrary' or 'disproportionate to the purposes they serve.'" *State v. Perry*, 139 Idaho 520, 523, 81 P.3d 1230, 1233 (2003) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). Here, the district court permitted Dalrymple to take the witness stand again on the hypnosis defense subject to the reasonable limitation that his lawyer could not proceed because of ethical qualms about the proposed testimony. The record shows that his lawyer had legitimate concerns about presenting the hypnosis defense because, after his investigation of it, he did not believe he could lay a proper foundation. Having concluded that the district court did not present an impermissible choice to Dalrymple, we turn to the question of whether his waiver met constitutional standards.

To determine if Dalrymple's waiver was constitutionally valid, we view the record as a whole, not just at the particular moment of waiver. The *Faretta* Court stated the defendant must "be made aware of the dangers and disadvantages of self-representation." 422 U.S. at 835. *Faretta* warnings, however, do not need to be given contemporaneously to the defendant's waiver. Instead, such warnings must be given "so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* (quoting *Adams v. United States ex. rel. McCann*, 317 U.S. 269, 279 (1942)). Therefore, the district court at a minimum must be satisfied that Dalrymple understood the inherent risks involved in waiving the right to counsel. *Hunnel*, 125 Idaho at 626, 873 P.2d at 880. While contemporaneous *Faretta* warnings are perhaps the most prudent means to ensure the defendant's grasp of the disadvantages of self-representation, we look to the record as a whole to determine if Dalrymple knowingly, intelligently, and voluntarily waived his constitutional right. *Lovelace*, 140 Idaho at 64, 90 P.3d at 289.

Dalrymple knowingly, intelligently, and voluntarily waived his right to counsel. While Dalrymple asks us to consider that he waived his right to counsel in the heat of the moment, the entirety of the record shows that he understood the risks and consequences of self-representation. Approximately six weeks before trial, the district court provided Dalrymple an extensive set of *Faretta* warnings when he first suggested that he might proceed pro se, advising him both of the advantages of retaining a lawyer at trial and the disadvantages of representing himself. At that time, Dalrymple declared such a waiver would be foolish. The district court told him again at trial that he was subject to cross-

examination. The statements of Dalrymple's counsel at that time should have given him great pause – that the attorney, a trained professional, could not figure out how to establish a foundation for the hypnosis testimony, that the hypnosis defense "doesn't make sense to me," that presentation of the testimony would be "tantamount to just asking the jury to come back with a guilty verdict," and that he had told Dalrymple on a couple of occasions that they had "no scientific background that we could establish this." Dalrymple has a GED and went to a year of college. He testified at the pretrial hearing that he has never been diagnosed or treated for a mental illness, nor did anyone advise or threaten him not to have a lawyer. The record as a whole indicates that Dalrymple understood his rights and that he validly waived his Sixth Amendment right to counsel. A knowing and voluntary waiver is not necessarily a wise or dispassionate waiver.

Last, Dalrymple argues that the district court violated his statutory right to counsel because the district court did not make a factual finding at the time of waiver that he acted with full awareness. *See State v. Lindsay*, 124 Idaho 825, 828, 864 P.2d 663, 666 (App. 1993). I.C. § 19-857 provides that a defendant may waive his right to counsel "if the court concerned, at the time of or after waiver, finds of record that he has acted with full awareness of his rights and of the consequences of a waiver and if the wavier is otherwise according to law." The district court made such findings after Dalrymple had waived his right to counsel.

## C.

On appeal, Dalrymple asserts that the district court limited his right to present his defense when it refused to allow him to recall K.B. as a witness. The Sixth Amendment guarantees that a criminal defendant has the right "to have compulsory process for obtaining witnesses in his favor." *Accord* Idaho Const. Art. I, § 13. Compulsory process "is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). The right of the accused to present witnesses in his own defense is fundamental but is not without limitation. *Taylor v. Illinois*, 484 U.S. 400, 408-10 (1988).

A mere deprivation of testimony does not establish a Sixth Amendment violation. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Compulsory process only

6

applies if the defendant can "at least make some plausible showing of how [the witnesses'] testimony would have been both material and favorable to his defense." *Id.*; *accord State v. Kerchusky*, 138 Idaho 671, 676, 67 P.3d 1283, 1288 (App. 2003). Materiality and favorableness are judged in the context of the whole record. *Valenzuela-Bernal*, 458 U.S. at 868. In this case, Dalrymple failed to make the requisite showing of materiality and favorableness. K.B. had testified that neither her mother nor Dalrymple asked her to lie about being abused. When offered the opportunity to lay a foundation to show some ability in hypnosis, Dalrymple could not. In light of the entire record, Dalrymple did not show that K.B.'s testimony would have been material or favorable to his defense. Thus, the district court did not violate Dalrymple's right to compulsory process by refusing to allow K.B. to be recalled.

**D.**

Dalrymple argues that the district court prejudiced him by commenting on his testimony in the jury's presence. "Remarks or comments by a trial judge which would tend to prejudice either of the parties to a jury trial are proscribed because of the great possibility that such an expression will influence the jurors." *State v. White*, 97 Idaho 708, 711, 551 P.2d 1344, 1347 (1976). "Remarks which are prejudicial are those which constitute comment on the weight of the evidence or indicate an opinion of the court as to the guilt or innocence of the defendant." *Id.* at 712, 551 P.2d at 1348. When a statement reflects the court's opinion as to the evidence in a clear and unambiguous manner, and when it relates to a critical issue in the case, then that statement constitutes prejudicial error. *Id.*

Dalrymple specified three instances where he claims that the district court made impermissible commentary on his testimony. First, citing lack of foundation, the prosecutor objected to his testimony on hypnotic theory, and the district court sustained it, stating:

> You are going to need to establish that you are certified or qualified to discuss the subject of hypnosis, sir, through educational certification or some type of professional certification, some type of course study. Without that, I'm not going to allow you to testify about hypnosis.

Second, after asking Dalrymple to continue with how he hypnotized K.B., Dalrymple stated that "Okay. There is a deadline –" and then he tried to explain the types of

7

hypnosis. The district court responded that "I want you to – again, I don't want you to give them a discussion about how people are hypnotized. I want you to specifically relate what you did to K.B. to hypnotize her. Did you use this countdown to hypnotize her or not?" Third, Dalrymple attempted to explain his past experience with hypnosis but the district court asked him to proceed to the next question after allowing Dalrymple to answer.

The district court properly explained its evidentiary ruling to the defendant. A criminal defendant proceeding pro se still must follow the court's substantive and procedural rules. *Faretta*, 422 U.S. at 834. The district court was providing guidance to Dalrymple so he could present his testimony within the bounds of the evidence rules. Dalrymple did not establish any credentials to testify as an expert witness so the district court limited him to testifying as a lay witness, who cannot opine based on specialized knowledge. I.R.E. 701. Thus, the district court explained what was required to qualify as an expert and then restricted the testimony to Dalrymple's lay opinions when he could not qualify himself. The district court did not improperly weigh the evidence or indicate its views on his defense but, instead, required Dalrymple to adhere to the rules of evidence.

**E.**

We review a criminal sentence under an abuse of discretion standard. *State v. Calley*, 140 Idaho 663, 665-666, 99 P.3d 616, 618-619 (2004). Sentences fixed within the statutory limits will ordinarily not be considered an abuse of discretion. *State v. Sheahan*, 139 Idaho 267, 284, 77 P.3d 956, 973 (2003). When a sentence is challenged as being excessively harsh, we independently review the record on appeal, having due regard for the nature of the offense, the character of the offender, and the protection of the public interest. *Calley*, 140 Idaho at 666, 99 P.3d at 619. Also, the defendant must demonstrate that the sentence "in light of the governing criteria, is excessive under any reasonable view of the facts." *Id.* Sentences are reasonable if "it appears at the time of sentencing that confinement is necessary 'to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case.'" *Sheahan*, 139 Idaho at 284, 77 P.3d at 973.

8

The district court imposed sentences within the statutory limits on the felony counts. *See* I.C. §§ 18-1506(4) (sexual abuse of a child under sixteen); 18-1508 (lewd conduct with a child under sixteen); 18-4504(2) (kidnapping). Because the district court fixed the sentences within the statutory limits, we will not ordinarily view them as an abuse of discretion unless it is unreasonable upon the facts of the case. *Sheahan*, 139 Idaho at 284, 77 P.3d at 973. In sentencing, the district court discussed the mitigating factors that Dalrymple raised on appeal. He noted that Dalrymple's methamphetamine use likely impaired him prior to and on October 5, 2003, but not to the extent that he was unaware of his actions. Although Dalrymple had no prior felonies, the district court discussed the seriousness of the crimes and his post-conviction psychological evaluation, which concluded that he was a high risk to repeat his offenses. The district court also noted that Dalrymple's sentence may not "necessarily deter others, but certainly to you – is an important factor of the court's sentence here." We hold that in light of the facts of this case and the policy goals behind sentencing, the district court did not abuse its discretion in sentencing Dalrymple within the statutory limitations. *Calley*, 140 Idaho at 666, 99 P.3d at 619.

## III.

We affirm the judgment of conviction against Dalrymple as well as the sentence imposed.


Chief Justice SCHROEDER, and Justices TROUT, EISMANN and BURDICK CONCUR.

9