# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 41879

| | |
|---|---|
| KEVIN MILTON MINGO, | ) 2015 Unpublished Opinion No. 458 |
| | ) |
| Petitioner-Appellant, | ) Filed: April 8, 2015 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| STATE OF IDAHO, | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| Respondent. | ) BE CITED AS AUTHORITY |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment denying post-conviction relief, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Theodore S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Kevin Milton Mingo was convicted of possessing a controlled substance. He challenged that conviction in a petition for post-conviction relief. Before an evidentiary hearing, Mingo became dissatisfied with counsel and requested either permission to fire counsel and represent himself or the appointment of substitute counsel. The court denied the request for substitute counsel, but allowed Mingo to represent himself. After an evidentiary hearing, the court found that Mingo was not entitled to post-conviction relief. Mingo appeals.

# I.

# BACKGROUND

Mingo entered an *Alford*[1] plea to a charge of possessing a controlled substance in violation of Idaho Code § 37-2732(c)(1). The district court imposed a unified seven-year sentence with two years fixed.

Several months later, Mingo filed a petition for post-conviction relief asserting approximately six grounds for relief: (1) the State changed its theory of the case;[2] (2) due to injuries sustained in a motorcycle wreck, he was not competent to stand trial; (3) counsel failed to explain the import of certain procedures--notably his signing the plea agreement; (4) counsel failed to investigate and raise the issues Mingo believed were critical to his case; (5) counsel failed to file a Rule 35 motion after being asked to do so; and (6) his counsel colluded with the State to coerce his plea.[3] Mingo also requested the appointment of counsel.

---

[1] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

[2] This claim appears to have several subparts. Generally, Mingo believed that he was originally arrested and charged with possession of a bag of methamphetamine. He believed that the State later changed its legal theory of the case, and intended to prove that he possessed scales with methamphetamine residue. The first subpart of his claim is an argument that he was entitled to be informed of this change in legal theory and re-arraigned. Second, he believed that it was not proper to convict him for conduct relating to the scales. He noted that his girlfriend was convicted of possessing scales with methamphetamine residue on them and argued that an injustice occurred because two people cannot simultaneously possess a single object. Third, he contended that he had a defense to a charge that he possessed the bag of methamphetamine, and the change in theory prejudiced his ability to raise that defense.

Although it is not necessary to the disposition of this appeal, we note that the charging document did not specify whether Mingo was being charged with possession of the residue on the scales or possession of the bag of methamphetamine found in the car. Accordingly, the record does not show that the State changed its theory. Indeed, it seems very likely that the State intended to prove that Mingo possessed *both* items, as it did when Mingo's girlfriend went to trial. *See State v. Southwick*, ___ Idaho ___, ___ P.3d ___ (Ct. App. 2014), *rev. pending*. Finally, to the extent there was any change in the State's focus, the record indicates that the change in focus occurred after the State obtained a video of Mingo saying that police would not find any methamphetamine on the scales because he had "licked them clean."

[3] Mingo claims he was threatened by both the State and defense counsel. The threats amounted to the State charging Mingo as a persistent violator and counsel explaining the import of a persistent violator enhancement to Mingo's potential sentence. The trial court explained during the plea colloquy that these actions did not amount to coercion.

On July 31, 2013, the court appointed counsel, but Mingo continued to file various documents, including requests to proceed pro se. First, he filed two documents attempting to amend his petition and further explaining his post-conviction claims. Next, he requested transcripts and copies of any papers he had signed. He waited for a period of time to receive the requested transcripts, but when he did not receive them, Mingo filed his first written request to proceed pro se. By letter to the court received on September 24, 2013, he asserted that counsel had failed to respond to his calls or letters and that he was not receiving the paperwork he had requested or any response from the State.

Several days later, Mingo filed a second request to proceed pro se or, in the alternative, be appointed substitute counsel. Along with the motion, Mingo filed an affidavit explaining why he preferred having counsel: he was untrained in the law and lacked access to resources available to those outside of prison.

The court responded by letter, explaining that it did not intend to appoint new counsel at that time. Instead, it asked if Mingo wished to proceed with the appointed attorney or to proceed pro se. Mingo responded to the court's letter and explained that he would rather proceed pro se than continue to be represented by his current attorney, but he also wanted the court to appoint substitute counsel. At that time, he requested to be permitted to appear in person in all future proceedings.

Two weeks later, on November 1, 2013, the court held a status conference without transporting Mingo or allowing him to participate by telephone. There, Mingo's counsel indicated that he had "addressed [Mingo's] concerns in regard to counsel and asked to remain on [the] case for [the] time being." The court permitted the attorney to continue working on the case and told him that it would not be accepting further filings from Mingo unless Mingo fired the attorney.

Mingo continued to file documents objecting to the fact that he was not receiving paperwork personally. Following a December 16 pretrial conference at which Mingo again was not present, he filed a motion seeking to proceed "propra personal."[4] The court did not respond.

The court arranged to have Mingo appear in person at the evidentiary hearing. At that time, Mingo's counsel informed the court that Mingo had refused to see him at the jail and asked the court to determine whether Mingo wished to proceed pro se. In response to questioning,

---

[4] We infer that he meant he wished to proceed *in propria persona*, i.e., pro se.

3

Mingo reiterated his wish to proceed pro se, referencing his repeated motions making that request. He also requested a legal adviser to confer with and to perform research for him, but made clear that he wanted to represent himself. The court then briefly inquired of Mingo:

THE COURT: So you want to fire [defense counsel]?
MR. MINGO: Yes, I do.
THE COURT: You want to represent yourself today?
MR. MINGO: Yes, I do.

The court thereupon excused counsel and informed Mingo that he would be permitted to represent himself. Mingo made an opening statement and presented the testimony of two witnesses: himself and his trial counsel. After the hearing concluded, the court issued a written decision holding that Mingo had failed to prove any of his claims.

Mingo appeals and raises a single claim of error. He argues the district court erred by excusing counsel and permitting him to proceed pro se. Mingo also argues he should have either been provided substitute counsel or been affirmatively warned of the dangers of self-representation.

## II.

## ANALYSIS

If a post-conviction petitioner is unable to pay for the expenses of representation, the trial court may appoint counsel to represent the petitioner in preparing the petition, in the trial court, and on appeal. I.C. § 19-4904. The decision to grant or deny a request for court-appointed counsel lies within the discretion of the district court. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004). However, a post-conviction court commits reversible error when it denies counsel to a petitioner who asserts nonfrivolous claims. *Murphy v. State*, 156 Idaho 389, 393, 327 P.3d 365, 369 (2014) ("The standard for determining whether to appoint counsel for an indigent petitioner in a post-conviction proceeding is whether the petition alleges facts showing the possibility of a valid claim."); *Swader v. State*, 143 Idaho 651, 654, 152 P.3d 12, 15 (2007) ("[T]he court should appoint counsel if the facts alleged raise the possibility of a valid claim."); *Charboneau*, 140 Idaho at 793, 102 P.3d at 1112 (setting forth the conditions under which a post-conviction court should appoint counsel). In its analysis, the district court should consider that petitions filed by a pro se petitioner may be conclusory and incomplete. *See Charboneau*, 140 Idaho at 792-93, 102 P.3d at 1111-12. Facts sufficient to state a claim may not be alleged because they do not exist or because the pro se petitioner does not know the essential elements of

4

a claim. *Id.* Some claims are so patently frivolous that they could not be developed into viable claims even with the assistance of counsel. *Newman v. State*, 140 Idaho 491, 493, 95 P.3d 642, 644 (Ct. App. 2004). However, if a petitioner alleges facts that raise the possibility of a valid claim, the district court should appoint counsel in order to give the petitioner an opportunity to work with counsel and properly allege the necessary supporting facts. *Charboneau*, 140 Idaho at 793, 102 P.3d at 1112.

Apparently, the district court did not consider Mingo's claims frivolous and accordingly, Mingo was appointed counsel. On appeal, the State does not contend that the court erred by initially appointing counsel.

## A. Mingo Failed to Provide an Adequate Record of the Post-Conviction Court's Denial of His Request for Substitute Counsel

Mingo contends that the post-conviction court erred by denying his request for substitute counsel before permitting him to represent himself. Mingo's complaints about counsel, made in written, repeated motions were clear. He said post-conviction counsel had not maintained adequate contact, and Mingo was upset that counsel wanted to eliminate some of his claims. On October 1, 2013, the court sent a letter to Mingo explaining that it was disinclined to appoint substitute counsel *at that time*.[5]

At the November 1 status conference, the court took up the issue and allowed counsel the opportunity to respond to Mingo's complaints. Mingo was not present at that hearing, but his absence is not, standing alone, grounds for reversal. In *Rios-Lopez v. State*, 144 Idaho 340, 160 P.3d 1275 (Ct. App. 2007), as here, the petitioner made various arguments in support of his request for substitute counsel, including a complaint that counsel infrequently contacted him. *Id.* at 342, 160 P.3d at 1277. Thereafter, the court held a hearing on that matter, without the petitioner present, and denied the motion. We concluded that the petitioner had been given "a full and fair opportunity to present the facts and reasons in support of a motion for substitution of counsel," and therefore had not been denied due process. *Id.* at 344, 160 P.3d at 1279. Here,

_____

[5] In our view, the letter did not amount to a ruling on the motion. First, the district court had not yet heard from counsel and would have lacked the factual basis required to decide the motion. Second, it is not clear that a letter sent to a party would be a procedurally proper means of rendering a ruling. Third, in context, the phrase "at this time" appears to mean that any ruling was tentative, an indication of what the court was likely to rule, given the information available at the time. The ultimate decision to permit appointed counsel to continue representing Mingo was made after the relevant facts were gathered and on the record.

5

Mingo's filings had thoroughly explained to the court his dissatisfaction with appointed counsel prior to the status conference. Therefore, as in *Rios-Lopez*, we conclude that Mingo's absence from the status conference did not deprive him of an opportunity to support his request for substitute counsel.

At the status conference, the court permitted appointed counsel to remain on the case, essentially denying the request for substitute counsel. Unfortunately, our record of that proceeding is very limited; we have no transcript but only court minutes summarizing the proceedings. Therefore, we cannot determine whether counsel's responses to Mingo's complaints were pertinent or persuasive or whether the court's determination was proper. We know only that counsel "addressed petitioner's concerns" and that the district court found the explanation persuasive. It is the responsibility of an appellant to provide a sufficient record to substantiate his or her claims on appeal. *State v. Mowrey*, 128 Idaho 804, 805, 919 P.2d 333, 334 (1996). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *Id*. Therefore, because Mingo failed to present an essential transcript, we are constrained to hold that he has failed to show error when at the status conference the court denied Mingo's request for substitute counsel or to proceed pro se.

## B.     The Court Was Not Required to Give Mingo *Faretta* Warnings

Mingo argues that the district court erred by failing to warn him of the dangers of self-representation before letting him represent himself at the evidentiary hearing. Mingo cites authorities that stand for the proposition that *criminal defendants* should be given warnings before they waive the right to counsel. *See Faretta v. California*, 422 U.S. 806, 819 (1975). In *Faretta*, the Court held that the Sixth Amendment grants a criminal defendant the right to make his defense personally, i.e., to proceed pro se. However, the Court recognized that in "most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id.* at 834. Because the choice to self-represent is usually so deleterious to a defendant's interests, *Faretta* requires that the trial court ensure that a defendant understands the import of his decision before he waives the right to counsel:

> [H]e should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

*Id*. at 835 (internal quotation marks omitted).

Mingo does not argue that the *Faretta* decision is directly applicable. He concedes that the *Faretta* decision was based upon the Sixth Amendment right to counsel in criminal cases. Likewise, he concedes that our Supreme Court has held that a post-conviction petitioner does not enjoy a Sixth Amendment right to counsel. *See Murphy*, 156 Idaho at 394, 327 P.3d at 370. Accordingly, rather than arguing that *Faretta* is directly applicable, Mingo asserts that the Due Process Clause of the Fourteenth Amendment requires some warnings in the post-conviction context.

In support of his view, Mingo cites authority from a variety of other states. But, these cases do not hold that *Faretta* warnings must be given to a post-conviction petitioner. For example, a Florida court held that *Faretta* warnings are not required, but that a post-conviction court should inquire to determine whether the petitioner's decision is voluntary and intelligent. *Jones v. State*, 69 So. 3d 329, 335 (Fla. Dist. Ct. App. 2011). Likewise, a Colorado court held that the post-conviction court should develop a record to show that a petitioner's decision was voluntary, but need not give the warnings required by *Faretta*. *People v. Duran*, 757 P.2d 1096, 1097 (Colo. App. 1988).

We conclude that no warnings were required in this case. Our Supreme Court has held that even in criminal cases, the warnings suggested in *Faretta* are not necessarily required. The Court described such warnings as one "prudent means to ensure the defendant's grasp of the disadvantages of self-representation." *State v. Dalrymple*, 144 Idaho 628, 634, 167 P.3d 765, 771 (2007). Instead of deeming such warnings essential in every case, the Idaho Supreme Court has held that it will search "the record as a whole to determine if [a criminal defendant] knowingly, intelligently, and voluntarily waived his constitutional right" to counsel. *Id*. at 634, 167 P.3d at 771. Thus, even assuming, arguendo, that Mingo was entitled to the same protections as a criminal defendant, it is necessary only that the "record as a whole" show that Mingo knowingly, intelligently, and voluntarily chose to discharge his attorney and proceed pro se.

The record here shows that Mingo's decision was voluntary--he persistently requested permission to represent himself. And, the record shows that Mingo understood "the dangers and disadvantages of self-representation." *See Faretta*, 422 U.S. at 835. As his own letters to the district court show, Mingo understood that he was not trained in the law, that he had limited access to legal materials, and that the State would be represented by trained attorneys. The

7

record is clear; Mingo voluntarily chose to represent himself with a basic understanding of the risks that it entailed. Accordingly, although it might have been more prudent for the post-conviction court to give warnings, the court did not commit reversible error by foregoing that process.

## III.

## CONCLUSION

Mingo has provided an insufficient record on appeal for the Court to review the denial of his request for substitute counsel. Therefore, the district court's order is affirmed. We conclude that the post-conviction court did not err by omitting to give *Faretta*-style warnings where the record shows that Mingo's decision to proceed pro se was knowing, intelligent, and voluntary. Therefore, the judgment dismissing Mingo's petition for post-conviction relief is affirmed. No costs to either party on appeal.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR.**