**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44143**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2017 Unpublished Opinion No. 638 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 8, 2017 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| ROBERT BENJAMIN BRACKETT, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Michael R. Crabtree, District Judge.

Order denying second motion for a new trial, <u>affirmed</u>.

Robert B. Brackett, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Robert Benjamin Brackett appeals from the district court's order denying his second motion for a new trial. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Brackett was convicted by a jury of eight counts of possession of sexually exploitive materials, Idaho Code § 18-1507A, and five counts of sexual battery of a minor child sixteen or seventeen years of age, I.C. § 18-1508A.[1] The district court imposed a unified sentence of ten years with five years determinate on each count of possession of sexually exploitative material, and twenty-five years with eight years determinate for each count of sexual battery of a minor

---

[1] Brackett was convicted at the conclusion of a second jury trial. Brackett's first jury trial ended in a mistrial after Brackett, who was representing himself, violated the district court's pretrial orders during his opening statement.

1

child sixteen or seventeen years of age. The district court ordered all sentences to run concurrently with each other, as well as with a sentence Brackett was serving in an unrelated case. Brackett's conviction was affirmed by this Court in *State v. Brackett*, 160 Idaho 619, 377 P.3d 1082 (Ct. App. 2016).

While Brackett's appeal from his judgment of conviction was pending, Brackett filed a motion for a new trial, based on newly discovered evidence, which the district court denied. Brackett did not file a timely notice of appeal from the district court's order. Thereafter, Bracket filed a second motion for a new trial. He also filed a motion for appointment of counsel, which the district court granted. However, at a subsequent hearing, the district court granted counsel's motion to withdraw and Brackett's request to proceed pro se. The district court then denied Brackett's motion for a continuance and proceeded directly to argument on the merits of Brackett's pro se second motion for a new trial. At the conclusion of the hearing, the district court denied the motion. The court entered a written order denying the motion three days later. The same day the court's order was entered, Brackett filed an amended motion for a new trial. Brackett timely appeals.

As this appeal was pending, Brackett filed a motion entitled "Motion for Production of Documents and/or Records Pursuant to Brady Laws, Due Process Rights, and States [sic] Prosecutors Continued Disclosure Obligations of All Favorable Information to a Defendant and to Notice for Hearing and Order be Given" (motion for production of documents). The district court denied Brackett's motion for production of documents asserting that it lacked jurisdiction to consider the motion. Brackett then filed a motion entitled "Motion for Reconsideration of Motion for Production of Documents Pursuant to Brady Law, Equal Protection and From Appeal of Order Denying Motion for New Trial as This Appeal Stands on its Own and Has Not Been Decided! (See State ex rel. Rich v. Hansen 80 Idaho 201) and for the Interest of Truth and Justice and to Notice for Hearing" (motion for reconsideration). The district court also denied that motion.

## II.

## ANALYSIS

On appeal, Brackett identifies four issues: (1) ineffective assistance of counsel; (2) *Brady*[2] violations; (3) the district court's abuse of discretion; and (4) denial of due process. At the outset, we recognize that Brackett's ineffective assistance of counsel and *Brady* violations claims were not raised as part of his second motion for a new trial, the denial of which is the subject of this appeal. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Therefore, Brackett's claims with respect to ineffective assistance of counsel and *Brady* violations fail because he raised them for the first time on appeal.[3]

## A.     Second Motion for a New Trial

Brackett argues that the district court erred in denying his second motion for a new trial. In support of that motion, Brackett submitted the affidavit of Timothy J. Miner, who testified at the jury trial as a defense witness. In the affidavit, Miner asserted that he had spoken to the victim, N.B., after the trial. He further attested that:

> [N.B.] told me that the prosecutor "Julie" told her if her story ([N.B.'s]) changed again she will ("Julie" prosecutor) put her in prison for perjury and contempt of court, and she should just take the money for her and her family and walk away. This is what she was told by Julie Sturgil (prosecutor) and she had better stick to the story. She also stated she had told them nothing had happened when she was first approached by health and welfare but they kept her in a room for a long time asking her over the same thing even though she asked for an attorney or her dad. She told them so she could go about her day.

---

[2]     *See Brady v. Maryland*, 373 U.S. 83 (1963).

[3]     Regardless, Brackett's claims of ineffective assistance of counsel and *Brady* violations are not a basis upon which a new trial can be granted. On appeal, Brackett alleges multiple instances of prosecutorial misconduct which he contends warrant a new trial, specifically that the prosecutor suppressed exculpatory evidence in violation of *Brady*. The Idaho Supreme Court has consistently recognized that the basis for a new trial enumerated in I.C. § 19-2406 are the exclusive grounds upon which a defendant's motion may be granted. *State v. Page*, 135 Idaho 214, 223, 16 P.3d 890, 899 (2000). Accordingly, the Court has repeatedly stated that prosecutorial misconduct is not a basis for granting a motion for a new trial under I.C. § 19-2406. *See State v. Christiansen*, 144 Idaho 463, 469, 163 P.3d 1175, 1181 (2007); *Page*, 135 Idaho at 223, 16 P.3d at 899; *State v. Jones*, 127 Idaho 478, 481, 903 P.2d 67, 70 (1995). Similarly, this Court has held that ineffective assistance of counsel is not an enumerated statutory ground for which a new trial may be granted. *State v. Parrott*, 138 Idaho 40, 42, 57 P.3d 509, 511 (Ct. App. 2002).

A decision on a motion for a new trial is reviewed under an abuse of discretion standard. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). Whether a trial court properly applied a statutory provision to the facts of a particular case is a question of law over which we exercise free review. *State v. Horn*, 124 Idaho 849, 850, 865 P.2d 176, 177 (Ct. App. 1993). A motion for a new trial based on newly discovered evidence must disclose: (1) that the evidence is newly discovered and was unknown to the defendant at the time of the trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant. *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976).

In its written order denying the motion, the district court concluded that the allegations in the Miner affidavit constituted inadmissible hearsay and could therefore not form the basis of a motion for a new trial. The court further concluded that Brackett failed to show the evidence was material or would probably produce an acquittal considering the overwhelming evidence of Brackett's guilt presented by the State at trial.

As an initial matter, the district court correctly determined that Miner's affidavit constituted hearsay and would not be admissible evidence. Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Idaho Rule of Evidence 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court. I.R.E. 802. Here, Brackett offered the statements as proffered by Miner to prove the truth of the matters asserted, namely that the prosecutor threatened N.B., that N.B. was paid for her testimony, and that N.B. initially denied having a sexual relationship with Brackett. On appeal, Brackett does not argue that any hearsay exception applies to these statements.

Applying the *Drapeau* test, the district court concluded in its order denying the motion for new a trial that the Miner affidavit could not meet the second prong requiring new evidence

4

to be material, not merely impeaching. We agree. Substantive testimony may be distinguished from impeachment evidence as follows:

> Unlike substantive evidence which is offered for the purpose of persuading the trier of fact as to the truth of a proposition on which the determination of the tribunal is to be asked, impeachment is that which is designed to discredit a witness, i.e. to reduce the effectiveness of his testimony by bringing forth the evidence which explains why the jury should not put faith in him or his testimony. Examples of impeachment evidence would include prior inconsistent statements, bias, attacks on [the] character of a witness, prior felony convictions, and attacks on the capacity of the witness to observe, recall or relate.

*State v. Marsh*, 141 Idaho 862, 868-69, 119 P.3d 637, 643-44 (Ct. App. 2004). In the present case, evidence as to the prosecutor's and N.B.'s veracity could only be used, if at all, for impeachment purposes. The submission of the statements of both individuals, and any such theoretical use of these statements at a trial, would be designed to discredit N.B.'s testimony. None of the statements would be offered "for the purpose of persuading the trier of fact as to the truth of a proposition" regarding whether or not Brackett engaged in a sexual relationship with N.B. or possessed the sexually explicit photos of N.B. Thus, even if Miner's assertions were taken as true, these assertions would be insufficient to satisfy *Drapeau* and result in a new trial.

As to the third prong of the *Drapeau* test, the district court concluded that the evidence would not probably produce an acquittal. Again, we agree. The evidence against Brackett presented at trial was overwhelming, including thirteen witnesses in addition to N.B. Moreover, admitted as evidence were photographs of: (1) items in Brackett's home and car that belonged to N.B.; (2) Brackett and N.B. together; (3) text messages exchanged between Brackett and N.B.; and (4) Brackett's clothing, belongings, and anatomy which corroborated N.B.'s testimony. Further, cell phone records were admitted showing a significant number of calls between Brackett and N.B. Also admitted as evidence were audio recordings of N.B.'s confrontation call with Brackett and Brackett's phone calls from jail. Accordingly, the district court did not err in concluding that Brackett did not meet his burden of showing that Miner's affidavit would probably produce an acquittal. The district court properly applied the *Drapeau* test and did not err in denying Brackett's second motion for a new trial.

## B.  *Faretta*

Brackett argues that the district court erred by failing to warn him about the dangers of proceeding pro se prior to permitting him to represent himself at the hearing on his second motion for a new trial. Brackett points to *Faretta v. California*, 422 U.S. 806 (1975) in support

of his contention that criminal defendants should be given warnings before they waive the right to counsel. In *Faretta*, the United States Supreme Court held that the Sixth Amendment grants a criminal defendant the right to represent himself in court proceedings. However, the Court recognized that in "most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id.* at 834. Because the choice to self-represent is usually so deleterious to a defendant's interests, *Faretta* requires that the trial court ensure that a defendant understands the import of his decision before he waives the right to counsel:

> [H]e should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

*Id.* at 835 (internal quotation marks omitted).

We conclude that no warnings were required in this case. The Idaho Supreme Court has held that even in criminal cases, the warnings suggested in *Faretta* are not necessarily required. The Court described such warnings as one "prudent means to ensure the defendant's grasp of the disadvantages of self-representation." *State v. Dalrymple*, 144 Idaho 628, 634, 167 P.3d 765, 771 (2007). Instead of deeming such warnings essential in every case, the Idaho Supreme Court has held that it will search "the record as a whole to determine if [a criminal defendant] knowingly, intelligently, and voluntarily waived his constitutional right" to counsel. *Id.* Thus, it is necessary only that the "record as a whole" show that Brackett knowingly, intelligently, and voluntarily chose to discharge his attorney and proceed pro se. The State bears the burden to prove that the defendant voluntarily waived his Sixth Amendment rights. *Id*. at 633, 167 P.3d at 770.

The record here clearly demonstrates that Brackett's decision was voluntary. At Brackett's request, appointed counsel filed a motion to withdraw from the case, citing a breakdown in the attorney-client relationship. According to appointed counsel's affidavit submitted in support of the motion to withdraw, Brackett expressed a "clear and adamant desire" to terminate appointed counsel's representation and suggested that he may be unwilling to provide information to counsel pertaining to his case. Brackett also sent a letter addressed to the district court and the Twin Falls prosecutor insisting that appointed counsel was not advancing the most beneficial legal arguments on his behalf. He further asserted, "I MUST GO PRO SE." At the hearing on the motion to withdraw, Brackett confirmed his desire to terminate counsel's representation and to proceed pro se on his second motion for a new trial.

6

Further, the record shows that Brackett understood "the dangers and disadvantages of self-representation." *See Faretta*, 422 U.S. at 835. Brackett previously represented himself in the underlying criminal case, after choosing to terminate representation, and took part in two jury trials. At that time, before permitting Brackett to represent himself at the underlying jury trials, the district court engaged in a lengthy *Faretta* inquiry. The district court informed Brackett that he would, in a pro se capacity, be bound by the relevant rules and procedures, that he might face difficulties investigating and researching his case as an incarcerated pro se inmate, that appointed counsel could assist him in all facets of the criminal proceeding, and that it is "almost always unwise to represent yourself in court." Brackett understood that he was not trained in the law, that he had limited access to legal materials, and that the State would be represented by trained attorneys. After being convicted at the conclusion of those trials, Brackett had firsthand knowledge of the perils of self-representation going forward. The record is clear that Brackett voluntarily chose to represent himself with a basic understanding of the risks that it entailed. Accordingly, the court did not commit reversible error by foregoing a *Faretta* inquiry.

## C. Amended Motion for a New Trial

Brackett argues that the district court erred by failing to consider his amended motion for a new trial and by informing him that any such motion would be untimely. At the hearing on the second motion for a new trial, after the district court granted appointed counsel's motion to withdraw, the district court granted Brackett's request to withdraw an amended motion for a new trial filed by appointed counsel. Thereafter, Brackett informed the court that he had recently mailed a pro se amended motion for a new trial to the court. At the time of the hearing, the amended motion had not yet been received by the district court. The district court informed Brackett that any subsequent motions for a new trial, based upon the discovery of new evidence, would be deemed untimely pursuant to I.C. § 19-2406(7) and Idaho Criminal Rule 34, which require such motions to be filed within two years of the final judgment. At the conclusion of the hearing, the district court stated that it would deny the second motion for a new trial and enter an order accordingly. Three days later, on the same day the district court entered its written denial order, Brackett's amended motion for a new trial was filed with the district court. The district court did not rule on the amended motion for a new trial.

As the State acknowledges, the district court was incorrect with respect to the timeliness of any subsequently filed motions for a new trial. Idaho Criminal Rule 34(b)(1) provides that

motions for a new trial based upon newly discovered evidence must be filed "within two years after final judgment." For the purposes of this rule, a judgment becomes "final" not when the judgment of conviction is entered by the district court, but when the appeal or time for appeal has ended. *See State v. Parrott*, 138 Idaho 40, 42, 57 P.3d 509, 511 (Ct. App. 2002). The remittitur in Brackett's direct appeal was issued on August 5, 2016. Therefore, motions for a new trial based on newly discovered evidence would be timely until August 5, 2018.

The State argues that this incorrect statement of the district court, made during a hearing on Brackett's separate, then-pending motion for a new trial, has no impact on the relevant issues in this appeal. Rather, the State claims that the issue of whether the district court erred by not considering the amended motion for a new trial is moot. We agree. An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded by judicial relief. *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010). The mootness doctrine precludes review when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Murphy v. Hunt*, 455 U.S. 478, 481 (1982); *Bradshaw v. State*, 120 Idaho 429, 432, 816 P.2d 986, 989 (1991)). Even where a question is moot, there are three exceptions to the mootness doctrine: (1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and, thus, is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest. *Barclay*, 149 Idaho at 8, 232 P.3d at 329.

Although at the hearing on Brackett's amended motion for a new trial, the district court ruled that the motion would be untimely when, and if it was received; it also made findings that the affidavit of Miner did not constitute reliable or admissible evidence. Brackett complains that the district court's mistaken interpretation of the timeliness for motions for a new trial caused the court to err in not considering the amended motion. However, Brackett's amended motion was received by the district court three days after denial of the motion upon which it was predicated, and the same day the district court entered its written order. Therefore, Brackett's subsequently filed amended motion was of no legal effect and does not fall within the scope of one of the exceptions to the mootness doctrine. Accordingly, the issue as to whether the district court should have considered the amended motion is moot.

**D.    Motion for Continuance**

Brackett argues the district court abused its discretion by denying his motion for a continuance after he elected to represent himself during the hearing on his second motion for a new trial. As noted above, after Brackett filed his second motion for a new trial, the district court granted Brackett's motion for appointment of counsel to represent him on the motion. Thereafter, at Brackett's request, appointed counsel filed a motion to withdraw from the case. The district court granted counsel's motion to withdraw, permitted Brackett to proceed pro se, but denied Brackett's motion for a continuance. The decision to grant a motion for a continuance rests within the sound discretion of the trial court. *State v. Ransom*, 124 Idaho 703, 706, 864 P.2d 149, 152 (1993). Generally, it has been held that unless an appellant shows that his or her substantial rights have been prejudiced by reason of a denial of his or her motion for continuance, appellate courts can only conclude that there was no abuse of discretion. *State v. Cagle*, 126 Idaho 794, 797, 891 P.2d 1054, 1057 (Ct. App. 1995).

Brackett has failed to demonstrate that his substantial rights were prejudiced by the denial of his motion for a continuance. At the hearing, when Brackett made his request for a continuance, he sought additional time to procure affidavits from witnesses who Brackett purported would attest to the victim's false testimony against him. He did not provide any argument regarding why a continuance was necessary to develop his assertions related to the Miner affidavit. The district court noted that nearly five months had passed since the second motion for a new trial was filed and that extensions had been previously granted. The district court also noted that there was not a reasonable probability that any admissible evidence would be discovered and presented. The district court had the discretion to consider the foundation and timeliness of Brackett's motion. *See Cagle*, 126 Idaho at 797, 891 P.2d at 1057 (holding that, when trial courts consider motions which may cause delay in the proceedings, the timing of the motion, length of the delay, and whether the delay is an attempt to manipulate proceedings are relevant factors in the trial court's consideration).

Brackett has failed to show that the district court committed reversible error or otherwise failed to act consistently with applicable legal standards. Even though Brackett elected to discharge counsel and proceed pro se, that decision did not automatically permit him additional time to develop his previously filed motion. It was within the district court's discretion to

determine if there was no compelling reason to continue and the district court reached its decision by an exercise of reason.

## E.     Motion for Production of Documents

Brackett contends that the district court abused its discretion by denying his motion for production of documents filed after the instant appeal had commenced, as well as the subsequent reconsideration of the denial of that motion. Brackett further asserts that the district court's order denied him of due process rights. Brackett's motion sought the production of various documents and unspecified evidence such as "any/all information regarding the conspired vicious and malicious prosecution of defendant." The motion for production was not made in the context of any other pending motion or proceeding before the district court, such as a motion for a new trial. The district court denied the motion for production of documents, concluding that it lacked jurisdiction because Brackett's judgment of conviction had already become final upon the entry of this Court's opinion affirming Brackett's conviction.

The district court's conclusion that it lacked jurisdiction over the motion because Brackett's judgment had become final was incorrect. As stated above, a judgment of conviction becomes final upon the entry of the remittitur following an appeal. In this case, the remittitur in Brackett's appeal was entered on August 5, 2016, after the Idaho Supreme Court denied his petition for review. Therefore, Brackett's judgment of conviction was not yet final when the district court denied his motion for production of documents. Regardless, the district court lacked jurisdiction to rule on Brackett's motion for production because the case was stayed pending Brackett's instant appeal.[4]

Whether a court lacks jurisdiction is a question of law, over which this Court exercises free review. *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004). When a notice of appeal is filed, the proceedings before the trial court are stayed, as provided for in Idaho Appellate Rule 13(c). *State v. Schwarz*, 133 Idaho 463, 466, 988 P.2d 689, 692 (1999); *State v. Wilson*, 136 Idaho 771, 772, 40 P.3d 129, 130 (Ct. App. 2001). The trial court is permitted to take certain actions during the pendency of an appeal, as enumerated in I.A.R. 13(c). *Wilson*, 136 Idaho at 772, 40 P.3d at 130 ("Idaho Appellate Rule 13(c) enumerates the types of actions

---

[4]     Where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Diaz*, 158 Idaho 629, 636, 349 P.3d 1220, 1227 (Ct. App. 2015).

that may be taken by a trial court during the pendency of a criminal appeal."); *State v. Wade*, 125 Idaho 522, 524, 873 P.2d 167, 169 (Ct. App. 1994) (following the filing of an appeal in a criminal action, "[t]he district court then lacks authority to enter orders in the case, except as to certain matters enumerated in Rule 13(c)"). The only enumerated power potentially relevant to a discovery motion is I.A.R. 13(c)(10), a catch-all provision that authorizes the trial court to "[e]nter any other order after judgment affecting the substantial rights of the defendant as authorized by law."

The district court's order denying Brackett's motion for production of documents is not an order affecting his substantial rights because Brackett has no right to post-verdict discovery. We are aware of no law expressly authorizing the district court to rule on a discovery motion not otherwise before the court prior to the filing of the notice of appeal. While the Idaho Criminal Rules govern pretrial discovery procedures, and the Idaho Rules of Civil Procedure govern discovery in civil post-conviction proceedings, no Idaho rule authorizes discovery in a criminal case after the defendant has been convicted. Further, I.C. § 19-2406 provides no mechanism for pursuing discovery in the pursuit of a motion for a new trial.

In *Wade*, this Court examined the catch-all provision and interpreted the rule to prohibit trial courts from reconsidering or making post hoc rationalizations of previous rulings:

> It appears that subsection 10 was intended by the drafters to be a catch-all exception for those orders that are necessarily part of the criminal process and ought not be delayed until the conclusion of an appeal. A trial court may not reconsider or make post hoc rationalizations of previous rulings once a notice of appeal is filed.

*Wade*, 125 Idaho at 524, 873 P.2d at 169. We continued by citing several civil cases that held that a court could not reconsider a prior ruling once a notice of appeal was filed. *Id.* But we noted that the broad language of the catch-all provision "was intended to give the district court jurisdiction to rule upon a motion that has been inadvertently overlooked or that was pending, but not yet decided, when the notice of appeal was filed." *Id.*; *see also Wilson*, 136 Idaho at 773, 40 P.3d at 131 (explaining that the preceding statement in *Wade* "was merely an expression of our holding that I.A.R. 13(c)(10) applied to the type of order that was then before the court; it was not an expression of the limits of subsection (10)"). Thus, we held that, "after an appeal is filed, a district court in a criminal proceeding may enter an order on a motion filed prior to the appeal where such ruling merely completes the record and does not in any way alter an order or judgment from which the appeal has been taken." *Wade*, 125 Idaho at 524, 873 P.2d at 169.

11

Here, there was no motion pending at the time the notice of appeal was filed, as the amended motion for a new trial was moot after the district court denied the second motion for a new trial. Brackett filed these discovery motions after the case was fully adjudicated. An appeal was already pending at the time the motion for production of documents and subsequent motion for reconsideration were filed. The district court's order denying Brackett's motion for production of documents is not an order affecting his substantial rights. Accordingly, the district court lacked the authority to entertain the motion.

**F.      First Motion for a New Trial**

Finally, Brackett argues that with respect to his first motion for a new trial filed on January 12, 2015, the district court erred in not holding a hearing on the motion prior to issuing its order denying it. The State asserts that this Court is without jurisdiction to consider this issue on appeal because Brackett failed to comply with I.A.R. 14. A question of subject matter jurisdiction is fundamental; it cannot be ignored when brought to our attention and should be addressed prior to considering the merits of an appeal. *State v. Kavajecz*, 139 Idaho 482, 483, 80 P.3d 1083, 1084 (2003). Even if jurisdictional questions are not raised by the parties, we are obligated to address them, when applicable, on our own initiative. The question of a court's subject matter jurisdiction is a question of law over which this Court exercises free review. *Id*.

Pursuant to I.A.R. 21, failure to file a notice of appeal with the clerk of the district court within the time limits prescribed by the appellate rules deprives the appellate courts of jurisdiction over the appeal. Idaho Appellate Rule 14 provides, in part:

> Any appeal . . . may be made only by physically filing a notice of appeal with the clerk of the district court within 42 days from the date evidenced by the filing stamp of the clerk of the court on any judgment or order of the district court appealable as a matter of right in any civil or criminal action.

Thus, once Brackett's first motion for a new trial was denied, he had forty-two days in which to appeal. The district court issued its order denying Brackett's first motion for a new trial on February 6, 2015. Brackett did not pursue an appeal of that order. Accordingly, this Court lacks jurisdiction to reach the merits of this claim.

### III.

### CONCLUSION

Brackett's claims with respect to ineffective assistance of counsel and *Brady* violations fail because he raised them for the first time on appeal. Further, the district court properly

applied the *Drapeau* test and did not err in denying Brackett's second motion for a new trial. In addition, the district court did not commit reversible error by foregoing a *Faretta* inquiry because the record is clear that Brackett voluntarily chose to represent himself with a basic understanding of the risks that it entailed. Brackett's subsequently filed amended motion for a new trial was of no legal effect and the issue as to whether the district court should have considered the amended motion is moot. Further, it was within the district court's discretion to determine there was not a compelling reason to continue and the district court reached its decision by an exercise of reason. Also, the district court correctly determined that it lacked authority to entertain Brackett's motion for production of documents. Finally, this Court lacks jurisdiction to reach the merits of Brackett's appeal from the denial of his first motion for a new trial. Accordingly, the district court's order denying Brackett's second motion for a new trial is affirmed.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.